The STATE of Ohio, Appellee,

v.

MYERS, Appellant.

[Cite as *State v. Myers* (2001), 143 Ohio App.3d 342.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18351.

Decided May 18, 2001.

344

Mathias H. Heck, Jr., Montgomery County Prosecuting Attorney, and Laura L. Wilson, Assistant Prosecuting Attorney, for appellee.

Jon Paul Rion, for appellant.

GRADY, Judge.

Defendant, John W. Myers, Jr., appeals from his conviction for possession of marijuana in excess of five thousand grams, in violation of R.C. 2925.11(C)(3)(e), and two counts of possession of a weapon under disability, in violation of R.C. 2923.13(A)(2).

In October 1998, Detective J. Schafer of the Dayton Police Department contacted Detective Stephen Brown of the Huber Heights Police Department. Det. Schafer informed Det. Brown that a confidential informant had disclosed that defendant was involved in the purchase and sale of large amounts of marijuana and cocaine.

Det. Brown began to gather information about defendant, and periodically he drove past Brown's residence in Huber Heights. On February 23, 1999, Brown sifted through defendant's trash and found plastic wrapping containing marijuana residue and a dryer sheet. Brown knew from past experience that dryer sheets are often packaged with illegal drugs to mask their odor.

During February 1999, Det. Schafer again contacted Det. Brown with information from the confidential informant. The informant stated that defendant was making frequent trips outside the area to buy drugs, and had recently remodeled his house with money that he made from drug sales.

On March 11, 1999, Det. Brown stopped defendant's brother for a traffic violation after he had left defendant's house. Brown arrested defendant's brother for driving under the influence. During a subsequent search of the vehicle, Brown discovered approximately one pound of marijuana in a plastic bag.

On July 30, 1999, Det. Schafer again informed Det. Brown that the confidential informant had notified him that defendant was buying large quantities of marijuana in Cincinnati and Lima. The informant told Schafer that defendant was bragging about the amount of money that he was making from drug sales, and that he had a hiding place in his Cadillac for drugs and money.

Det. Schafer again contacted Brown later that same day to inform him that a second confidential informant had told him that defendant had recently purchased twenty pounds of marijuana, which he was packaging and distributing himself. The second informant stated that defendant had been bragging about how much money he was making and spending.

Based on the information received from Det. Schafer, Det. Brown and other members of the Huber Heights Police Department set up a surveillance of defendant's residence. During the subsequent weeks, the police officers observed what they believed was suspicious behavior by the defendant, particularly the way he drove his car to avoid being followed.

On August 17, 1999, during his surveillance of defendant's house, Det. Brown observed defendant move things about in the trunk of the Cadillac and lift the carpeting inside the trunk. Defendant departed in the Cadillac and returned five hours later. When he returned, defendant did not remove any items from the trunk of the car.

The following day, defendant emerged from the house and opened the trunk of the Cadillac. Det. Brown observed him look around, as if to see whether anyone was watching. Defendant again began moving things around in the trunk. He removed a duffel bag, which appeared to be full from the way that defendant handled it, and placed it in the garage attached to the house. Next, Det. Brown observed the defendant remove a second duffel from the trunk of the car and place it in the garage. This duffel was open, and Brown saw white-colored bundles wrapped in plastic protruding from the duffel. Det. Brown later testified that he knew from past experience that drugs were often packaged in this manner, so he left the surveillance post to obtain a search warrant.

After Det. Brown left to procure the search warrant, Det. Mark Bruns continued the surveillance from the same location. The officers on duty observed the defendant's wife leave the residence in the Cadillac. Police stopped defendant's wife, fearing that evidence might be in the car. Although the officers smelled "raw" marijuana in the Cadillac, a search of the car revealed nothing. In the meantime, defendant left in another vehicle, and was subsequently stopped. The officers on duty decided to secure the house while they waited for the search warrant out of concern that others inside the house might destroy evidence. Defendant and his wife returned to the house to wait with the police.

Brown eventually radioed the officers on the scene that he had the search warrant. The search revealed that the duffel bags in defendant's garage contained a large amount of marijuana, wrapped in dryer sheets and plastic. The police also found numerous firearms in the residence. Defendant was arrested as a result of the evidence recovered during the search.

Defendant was charged with possession of marijuana in an amount more than five thousand but less then twenty thousand grams, R.C. 2925.11(C)(3)(e), and possession of cocaine in an amount less than five grams, R.C. 2925.11(C)(4)(a). Each of the drug possession charges carried a one-year firearm specification under R.C. 2929.14 and 2941.141. Defendant was also charged with four counts of possession of a weapon under disability, in violation of R.C. 2923.13(A)(2).

Defendant filed a nine-branch motion to suppress, which was heard on November 27, 1999. The trial court issued a decision overruling six of the branches on December 9, 1999, and overruled the remaining three branches on February 29, 2000. On May 10, 2000, pursuant to a plea agreement, defendant entered a plea of no contest to the charge of possession of marijuana in an amount exceeding

five thousand grams and to two counts of possession of a weapon under disability. The court imposed a sentence of a two-and-one-half-year prison term, a fine of $5,000, and suspended defendant's driver's license for two years.

Defendant filed a timely notice of appeal. He presents two assignments of error.

"First Assignment of Error

"The trial court erred and denied appellant the right to confrontation when it failed to order the disclosure of the place from where the officers conducted surveillance, and when it failed to even conduct a hearing on that issue."

When a motion to suppress evidence seized pursuant to a search warrant attacks the magistrate's issuance of the warrant, the motion presents two potential issues. One, and the critical issue, is whether the affidavit for the warrant provided a substantial basis upon which the magistrate could make an independent determination that probable cause existed for the search. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Defendant addresses that issue in the second assignment of error. The other issue is whether the warrant process was compromised by a false statement in the warrant affidavit. *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. To raise that latter issue, a "substantial preliminary showing" must be made. *Id.* Explaining that rule, *Franks* stated:

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id.,* 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

In branch I of his nine-branch motion, defendant asked the court to suppress the articles that were seized from defendant's residence "for the reasons set out in the attached memorandum." Those reasons were that the magistrate lacked probable cause to issue the warrant, that the warrant was not sufficiently particular in commanding the officers what to seize, that the evidence cited in the affidavit was stale, that the affidavit contained conclusions without factual bases,

and that the length of the search was overly protracted. Branch VIII alleged that the surveillances performed and observations made prior to obtaining the search warrant were illegal. The accompanying memorandum explains that this refers to "equipment used trespassing etc. and the manner of gathering evidence." None of the other branches of the motion challenged the warrant. There was no allegation that the warrant affidavit contained false information. The motion was not supported by affidavits or other evidentiary materials.

At the hearing on the motion to suppress, defendant called Det. Stephen B. Brown, the affiant, and questioned him concerning his surveillance of the defendant's residence. Det. Brown testified that it was conducted "[i]n the vicinity of that residence." When defendant asked Det. Brown for the location from which his surveillance was conducted, the state objected and asked for a sidebar conference. The conference was not recorded. After the conference, and without further inquiry on the record, the court addressed Det. Brown, stating:

"Sir, it is my understanding that as far as any specific addresses, etc., or descriptions of locations, due to safety concerns, you don't want to go into that. However, what we discussed at sidebar is as far as whether you were in a house, or car or van, that type of stuff, you can answer. Not particulars. All right?

"THE WITNESS: Okay."

The defendant continued to question Det. Brown, in detail, concerning his observations of defendant's residence during his surveillance. Det. Brown testified that he observed the defendant's house from a neighboring residence, and that he had a frontal view of the house from approximately twenty to twenty-five yards away. Defendant questioned Brown regarding his recollection of the contents of the garage, whether there were vehicles in the driveway that may have obstructed Brown's view, and whether he used binoculars to make his observations. Det. Brown testified that his view of the scene through a pair of binoculars was not obstructed the day he observed defendant remove the marijuana from the trunk of the Cadillac and place it in the garage.

Defendant renewed his objection to the court's ruling limiting his inquiry regarding the location from which the surveillance took place when he questioned Det. Bruns, who took over surveillance from the same location when Det. Brown left to obtain the search warrant. The court clarified the issues concerning that defendant could question the witness regarding the location, stating:

"All I have said, don't go for an identity of that house. But as far as what someone could see, how far away they were, as far as binoculars, you know, you asked the last witness about the strength of his binoculars. That kind of stuff is fine."

Defendant proceeded to question Bruns regarding his ability to see inside of the garage and whether his view was obstructed on that day.

The court permitted defendant to attack the truthfulness of the statements in Det. Brown's affidavit through his cross-examination of Brown and Bruns regarding their ability to observe what they claim to have observed, without the "substantial preliminary showing" that *Franks* requires. However, the court barred defendant from inquiring specifically about the place from which the surveillance was performed, an issue which was critical to the showing defendant was attempting to make that the statements in the affidavit concerning the officer's observations were untruthful. The question presented is whether that restriction prevented defendant from exercising some right that the law confers on him.

At trial, where guilt or innocence is directly in issue, the constitutional right of confrontation permits a defendant to inquire into any relevant matter. The scope of inquiry is narrowed on motions to suppress evidence for alleged Fourth Amendment violations, where the narrower issue presented is whether a particular search or seizure was illegal. *State v. Taylor* (1992), 82 Ohio App.3d 434, 612 N.E.2d 728. If the particular illegality alleged goes to the validity of a search warrant or the application for it, the matter of the identity of a confidential informant on whom the affiant relied is secondary to the issue presented. The court need not allow the defendant to inquire into the matter, and it may properly curtail that line of inquiry when it finds that revelation of an informant's identity puts the informant's safety at risk. *McCray v. Illinois* (1967), 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; *State v. Williams* (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779; *State v. Roe* (1971), 26 Ohio St.2d 243, 55 O.O.2d 480, 271 N.E.2d 296; *Taylor, supra.* We find that the situation here, where the location of the surveillance is the matter sought, is analogous to confidential informant rule.

The trial court prevented the defendant from inquiring about the location from which the surveillance was conducted. The court based its ruling on a finding that the safety of the neighbor who had allowed police to use his property for that purpose would be put at risk if his identity was revealed. We cannot review that finding, because the court took no evidence concerning the question. Ordinarily, that is a basis to reverse. However, we believe that reversal is not merited here.

Notwithstanding the free range of inquiry concerning the truthfulness of Det. Brown's affidavit that the court permitted defendant otherwise to exercise, defendant did not make the "substantial preliminary showing" of untruthfulness which *Franks* requires as a predicate for the inquiry he attempted to make. Neither did defendant make that showing subsequently on the basis of evidence

that the suppression hearing brought out. Therefore, the court's order did not deny a right that the law conferred on him when the court barred defendant from inquiring about the particular location from which police had conducted their surveillance of his residence in order to obtain facts that were recited in their application for a search warrant.

Defendant's first assignment of error is overruled.

"Second Assignment of Error

"The trial court should have sustained the motion to suppress because the affidavit in support of the search warrant failed to provide probable cause, and a reasonable police officer should have known that probable cause was lacking."

■ When assessing the adequacy of an affidavit offered to support a request for a search warrant, a magistrate must make a "practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. This approach is often called the "totality of the circumstances" test. *Id.*

The *George* opinion set forth the standard of review as follows:

"In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.,* paragraph two of the syllabus, citing *Illinois v. Gates, supra.*

■ Our charge when reviewing a magistrate's probable cause determination is the same as the trial court's. *State v. Conley* (Nov. 7, 1997), Montgomery App. No. 16216, unreported, 1997 WL 691465. Therefore, an appellate court must review the magistrate's decision, not the trial court's decision. *George, supra.* In other words, it is our task to determine whether Brown's affidavit

presents a "substantial basis" for the magistrate to have found a "fair probability" that the contraband would be found in defendant's home.

Defendant argues that the affidavit "failed to provide probable cause for the search, and that the affidavit was so lacking in probable cause that a 'reasonable' officer would have known it." We disagree.

Defendant first asserts that "probable cause may be solely premised on the accusations of a confidential informant * * * when the informant demonstrates his or her basis of knowledge for the information," and that here the affidavit fails to provide the basis of the informant's knowledge. While defendant cites *Illinois v. Gates* for this proposition, his argument actually advances a version of the *Aguilar–Spinelli* test. See *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. Defendant's argument fails because, in *Illinois v. Gates,* the Supreme Court expressly rejected the rigidity of the *Aguilar–Spinelli* doctrine in favor of the totality of the circumstances approach:

"We agree * * * that an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case * * *. Rather, * * * they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates, supra,* 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543.

In addition, defendant argues that the information provided by the informants was "stale," that the hearsay nature of the information should deem it unreliable, and that the informants never claimed that illegal activity was occurring at defendant's house. Without addressing these arguments, which appear to be dubious at best, we again note that our charge is merely to determine whether the evidence presented in the affidavit, as a whole, provided a substantial basis for the magistrate to believe that there was a fair probability that contraband would be found in defendant's home.

■ Here, the information received from the informants and relayed to Det. Brown only initiated the investigation. Brown and the other officers working this case then acquired a substantial amount of evidence against the defendant through their own efforts. It is clear to us that the facts produced by his investigation which Det. Brown reported in his affidavit presented a substantial basis for the magistrate to find that there existed a fair probability that illegal drugs could be found in the defendant's home. Therefore, we find that the

magistrate was justified in issuing the search warrant that uncovered the contraband.

 Second, defendant argues that once the information gathered from the informants is removed, the affidavit fails to provide probable cause justifying the issuance of the search warrant. To support this argument, defendant merely offers an alternative explanation for each piece of evidence and information that Det. Brown gathered during the investigation. Defendant fails to recognize that we do not conduct a *de novo* review of the evidence, but rather we must determine whether the magistrate, viewing the totality of the circumstances, was justified in issuing the warrant. We find that the magistrate was so justified.

Finally, defendant argues that a "reasonable officer" should have known that the affidavit failed to provide probable cause for the search. Defendant essentially argues that the good-faith exception to the exclusionary rule, which provides that a warrant will not fail because of an erroneous probable-cause determination if the executing officer reasonably relies on the magistrate's determination, should not apply in this case because the affidavit is fatally devoid of evidence that would cause a reasonable police officer to rely on it. See *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. However, having found that the magistrate was justified when he determined that the affidavit provided probable cause for the search warrant to issue, we need not consider whether Det. Brown should or should not have relied on the magistrate's determination.

The defendant's second assignment of error is overruled.

### Conclusion

Having overruled both assignments of error presented, the ruling of the trial court will be affirmed.

*Judgment affirmed.*

FREDERICK N. YOUNG and BROGAN, JJ., concur.

BROGAN, Judge, concurring.

I concur in Judge Grady's opinion because the defendant failed to make the preliminary showing required by *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. I write separately, however, to express my concerns about the trial court's adoption of "a surveillance location privilege" in this case. I believe that the trial court should carefully consider the factors enunciated in *Roviaro v. United States* (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, before sustaining the government's request to prevent disclosure of a surveillance location.