OPINION
{¶ 1} Plaintiff-appellant, the Village of Kirtland Hills ("Kirtland Hills") appeals the January 6, 2004 nunc pro tunc judgment entry of the Willougby Municipal Court, granting defendant-appellee, Jabra Deir's ("Deir") motion to suppress. For the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} The following facts were adduced at the suppression hearing. On October 16, 2003, at approximately 2:10 a.m., Officer Sean Parker, ("Officer Parker") of the Kirtland Hills Police Department, was traveling eastbound along Interstate 90 on routine patrol, when he observed a pick-up truck, operated by Deir, traveling at a low rate of speed relative to the posted speed limit of 65 miles per hour. Following Deir for approximately a mile, he paced the truck's speed at less than 50 miles an hour. During this time, Officer Parker also noted that the truck had no illumination for the rear license plate and, on the basis of this, and the truck's low rate of speed, turned on the patrol car's overhead lights to effectuate a stop. The truck continued on for approximately 100 yards before finally pulling over.
 {¶ 3} Officer Parker then approached the truck from the passenger side. The truck had three occupants, Deir, who was driving, Max Omura, who was seated in the middle, and William Hill ("Hill"), who was seated on the passenger side. Officer Parker spoke with Deir, and informed him of the basis of the stop. Deir stated that he knew the light was out and that it was due to a recent accident. Officer Parker then asked Deir for his license, which Deir produced. During this initial encounter, Officer Parker noted a strong odor of alcoholic beverage emanating from the vehicle. He also learned at this time that the men were returning home after watching a baseball game at a restaurant/bar.
 {¶ 4} When he walked around to the driver's side of the truck, Officer Parker again detected the odor of alcoholic beverage. On closer examination, Officer Parker also observed that Deir's eyes were very red and bloodshot, his eyelids were drooping, and his pupils were dilated. In addition, Officer Parker noted that Deir's speech was "very slurred and muttered and mushmouth," with some of his sentences starting out clearly and ending muttered. Based upon these observations, Officer Parker then asked Deir if he had been drinking. Deir denied drinking alcohol.
 {¶ 5} Officer Parker then asked Deir to step out of the truck so he could administer field sobriety tests. Deir complied with this request, but stated he was taking medication for pain. While standing outside the vehicle, Officer Parker again smelled the strong odor of alcohol coming from Deir as he spoke. Officer Parker then attempted to administer the Horizontal Gaze Nystagmus (HGN) test, but was unable to complete the test successfully due to Deir's failure to comply with the instructions. Rather than following Officer Parker's finger with his eyes, Deir would move his head to track its movement. When Officer Parker told him to keep his head still, Deir would stare straight ahead. During the administration of this test, Officer Parker additionally observed that Deir momentarily swayed slightly. Officer Parker then asked Deir if he would be willing to take a portable breath test to confirm that he had not been drinking, but Deir refused.
 {¶ 6} Officer Parker made a second attempt to administer the HGN test. This time, Deir complained about Officer Parker's flashlight being too bright. Officer Parker then switched to a penlight and tried again. Deir continued to stare straight ahead while the test was performed, rather than following Officer Parker's finger with his eyes. When Officer Parker attempted to explain that he wanted Deir to submit to the HGN test to make certain that he was safe to be driving, Deir became belligerent, yelling and arguing that the officer was a public servant, and as such, should serve him by calling a taxi or calling his wife to come pick him and his friends up, because he didn't feel safe driving home. Officer Parker elected not to administer additional field sobriety tests on the basis of Deir's assertions that he had injuries that affected his ability to perform the one leg stand and walk and turn tests.
 {¶ 7} The conversation continued for a total of approximately fifteen minutes, during which time, Deir would periodically become louder and more verbally aggressive, occasionally using profanity, and asserting that he believed Officer Parker wasn't performing his job by questioning him about drinking, when he should have been finding them another way home so he wouldn't have to drive. Officer Parker testified that when Deir yelled, he became even more difficult to understand, and because of Deir's aggressive tone and manner and "mood swings," he eventually called for backup.
 {¶ 8} Shortly thereafter, Patrolman Sloan, ("Sloan") of the Lakeland Community College Police, arrived to assist Officer Parker. It was at this point, that Officer Parker decided to place Deir under arrest on suspicion of driving under the influence of alcohol and/or drugs, a violation of Codified Ordinances of Kirtland Hills, Section 333.01(A)(1), prohibiting any person from operating a vehicle under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse. Officer Parker then attempted to place Deir in the back seat of his patrol car, but Deir repeatedly objected, claiming that he had injuries and medical conditions that prevented him from sitting in the vehicle the way that the officer was requesting. While assisting Officer Parker, Sloan also observed Deir's eyes were bloodshot and detected an odor of alcoholic beverage coming from his mouth. He also stated that he observed that Deir spoke with an accent and was agitated when placed under arrest.
 {¶ 9} On December 3, 2003, Deir filed a motion to suppress evidence, citing a lack of probable cause to arrest. Deir stipulated that Officer Parker had authority to effectuate the initial traffic stop.
 {¶ 10} On December 22, 2003, the trial court held the suppression hearing. Officer Parker and Sloan were present to testify for the prosecution and testified to the facts set out above. The trial court also heard from Hill, who testified that Deir had not been drinking. He also testified that Deir has an accent which can make him difficult to understand and that Deir took medication for a bad back. Hill also testified that Deir swore and yelled at the officers and at Hill when being placed under arrest, but that this was not typical behavior for Deir. Deir also testified regarding his medical conditions and the medications he was taking, and apparently to demonstrate also that his normal manner of speaking was with an accent.
 {¶ 11} Based upon the testimony at the suppression hearing, the trial court granted Deir's motion to suppress. Kirtland Hills timely appealed asserting a single assignment of error:
 {¶ 12} "The trial court erred in granting the motion to suppress filed by the defendant-appellee on the basis that his arrest on suspicion of driving under the influence was not supported by probable cause."
 {¶ 13} Kirtland Hills takes issue with the trial court granting the motion to suppress by basing its conclusions on, "the cross-examination of the Patrolman [having] the effect of minimizing the impact of the probable cause determination of this witness," as well as the testimony of Hill and Deir. The trial court cited to nothing specific in Officer Parker's testimony, but rather appeared to rely on alternative proffered explanations for the officer's observations based upon the defense's theories.
 {¶ 14} The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses.State v. Hill, 75 Ohio St.3d 195, 208, 1996-Ohio-222. Since the trial court is in the best position to resolve the factual issues, State v.Searls (1997), 118 Ohio App.3d 739, 741, citing State v. Mills
(1992), 62 Ohio St.3d 357, 366, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. Searls, 118 Ohio App.3d at 741. Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts. Id.
 {¶ 15} "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. * * * In making this determination, we will examine the `totality' of the facts and circumstances surrounding the arrest." State v. Homan,89 Ohio St.3d 421, 427, 2000-Ohio-212 (citations omitted). "While probable cause means more than bare suspicion, it means less than evidence that would justify conviction." State v. Hummel, 154 Ohio App.3d 123,2003-Ohio-4602, at ¶ 28. The burden is on the prosecution to prove that probable cause to arrest existed. Xenia v. Wallace (1988),37 Ohio St.3d 216, 220.
 {¶ 16} In the instant matter, taking into account the totality of facts and circumstances, we conclude that Officer Parker had probable cause to arrest Deir for driving under the influence. At the moment of arrest, Officer Parker had already observed that Deir's eyes were red and bloodshot, his speech was slurred and mumbled, sometimes starting off clearly and trailing off. He detected a strong smell of alcohol from the vehicle when he stopped it. Although Deir's companions admitted to drinking, Officer Parker detected the strong smell of alcohol emanating from Deir's breath once he removed him from the vehicle. These facts were corroborated independently by Patrolman Sloan at the time of the arrest. While these factors are, without more, insufficient to establish probable cause to arrest, see Eastlake v. Pavilsin, 11th Dist. No. 2001-L-207, 2002-Ohio-4702; State v. Finch (1985), 24 Ohio App.3d 38, they are factors to be considered.
 {¶ 17} An additional factor was Officer Parker's observation that Deir was operating his vehicle at a speed considerably below the speed limit, which is also a factor associated with intoxication. See Centerville v.Mills (May 31, 1996), 2nd Dist. Nos. 15465, 15490, 1996 Ohio App. LEXIS 2226. Also, after Officer Parker activated his overhead lights, Deir traveled over 100 yards before finally pulling over and stopping.
 {¶ 18} Furthermore, when he attempted to conduct field sobriety tests, Officer Parker noted that Deir's eyelids were drooping and his pupils were dilated, and that Deir complained of being sensitive to the light from his flashlight, factors which are also consistent with intoxication. Also, during both attempts at performing the HGN test, Deir failed or blatantly refused to follow instructions, even after Officer Parker's repeated attempts to explain what he wanted him to do, and swayed slightly during the first attempt at testing. Officer Parker elected not to ask Deir to perform the one-leg stand or the walk and turn tests due to Deir's back problems. However, the "totality of the facts and circumstances can support a finding of probable cause to arrest even when no field sobriety tests were administered." Homan,89 Ohio St.3d at 427.
 {¶ 19} In lieu of additional field sobriety tests, Officer Parker asked that Deir consent to a portable breath test, and Deir refused. The Supreme Court of Ohio has held that a trier of fact may consider a defendant's refusal to submit to a chemical test as evidence in deciding whether the defendant was under the influence of alcohol. Maumee v.Anistik (1994), 69 Ohio St.3d 339, at syllabus; See also, State v. Wargo
(Oct. 31, 1997), 11th Dist. No. 96-T-5528, 1997 Ohio App. LEXIS 4846, at *10. The same may be said for the defendant's refusal to submit or comply with field sobriety tests. State v. Flynt, 11th Dist. No. 2001-P-0116, 2003-Ohio-1391, at ¶ 16; State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, at ¶ 19. (Holding that refusal to submit to field sobriety testing is a factor which may be considered in making a probablecause determination). See also, State v. Terry (Jun. 6, 1997), 2nd Dist. No. 16066, 1997 Ohio App. LEXIS 2488; State v. Lilly (Nov. 19, 1992), 2nd Dist. No. 13390, 1992 Ohio App. LEXIS 5852; State v. Heitzenrater (Dec. 7, 1998), 12th Dist. No. CA98-06-119, 1998 Ohio App. LEXIS 5829.
 {¶ 20} In addition, courts have held that an officer's observation of uncooperative behavior and mood swings can also be used to establish probable cause to arrest for driving under the influence. Molk,
2002-Ohio-6926, at ¶ 20; State v. Rader (Jun. 25, 1001), 5th Dist. No. 00CA72, 2001 Ohio App. LEXIS 2996, at *6. In the instant case, both Officer Parker and Patrolman Sloan testified about Deir's belligerent behavior at various times during the encounter. In fact, Deir's own witness, Hill, testified on cross-examination that he stepped out of the truck to try to calm Deir down when Deir was swearing and getting irate, and that this behavior was out of character for Deir.
 {¶ 21} Moreover, despite the fact that Deir never admitted to drinking, he did admit to Officer Parker that he also didn't feel safe driving home and requested a taxi or to call his wife to pick him up. Ultimately, he left the scene in an ambulance, as he requested.
 {¶ 22} Most importantly, while the defense, via testimony and cross-examination, proffered several alternative explanations for Officer Parker's observations based upon Deir's medical conditions and his normal manner of speaking, these have no bearing whatsoever on the determination of probable cause. This court has held that "[t]he actual cause of * * * [the suspect's] physical condition is only relevant to a defense to the charge. Those issues are more properly left for the trier of fact at trial to determine the relationship, if any, between [the suspect's] injuries and the conditions observed by the arresting officer." Hummel,154 Ohio App.3d 123, 2003-Ohio-4602, at ¶ 35.
 {¶ 23} Pursuant to the Sixth Amendment, a criminal defendant has a right to confront his accusers, which includes the opportunity to cross-examine that accuser. Pointer v. Texas (1965), 380 U.S. 400; UnitedStates v. Clark (2d Cir, 1973), 475 F.2d 240. A suppression hearing is considered part of the trial at which the defendant is entitled to confront witnesses. United States v. Lopez (E.D.N.Y., 1971),328 F.Supp. 1077; see, also, State v. Tesmer, 9th Dist. No. 02CA008187, 2003-Ohio-3509. A hearing on a motion to suppress is a critical stage of the prosecution, and the confrontation clause of the Sixth Amendment guarantees an accused the right to confront witnesses.State v. Mondo (N.D., 1982), 325 N.W.2d 201. The scope of inquiry permitted by the constitutional right of confrontation is understandably generally more narrow in hearings on motions to suppress evidence for alleged Fourth Amendment violations, viz., whether a particular search or seizure was illegal. State v. Myers (2001), 143 Ohio App.3d 342, 349.
 {¶ 24} As a general proposition, a defendant is entitled to challenge or submit contrary evidence, as well as confront his or her accusers at a suppression hearing. A defendant is not limited to the subjective statement in Hummel, supra, quoted above, but may, as a matter of cross examination, or submissions in defense in chief, cause the submission of evidence that has defensive chemistry as long as it is otherwise relevant, material, and competent on the issue of probable cause.
 {¶ 25} However, the primary focus in the suppression proceeding is whether the law enforcement officer involved had an appropriate basis of legal probable cause. Under the totality of the circumstances in this case, Officer Parker had probable cause to arrest appellant for driving under the influence.
 {¶ 26} For these reasons, we find Kirtland Hills' assignment of error is well-taken. The trial court's decision was not supported by competent and credible evidence. The judgment of the Willoughby Municipal Court is reversed and remanded for proceedings consistent with this opinion.
Ford, P.J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.