[Cite as *State v. Lowe*, 2017-Ohio-851.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26994 |
| | : | |
| v. | : | Trial Court Case No. 14-CR-4182 |
| | : | |
| CARL LOWE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of March, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0069386, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

V. GAYLE MILLER, Atty. Reg. No. 0091528, 724 Clifton Drive, Post Office Box No. 10124, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, P.J.

{¶ 1} Carl Lowe appeals from his convictions stemming from the discovery of child pornography on his computer. Finding no error, we affirm.

## I. Background

{¶ 2} In May 2013, Special Agent Azia Mason of the Ohio Bureau of Criminal Identification and Investigation (BCI) downloaded a file containing child pornography from a device at IP address [****]. She discovered that this IP address was registered to Time Warner Cable, and Time Warner was subpoenaed for information on who had been assigned the IP address. Time Warner responded that the IP address was assigned to Lowe at 205 Jackson Street, Apartment 4, in Dayton, Ohio. BCI Special Agent Stephen Burke drafted an application for a search warrant of this address and a supporting affidavit. He presented both documents to a Montgomery County Common Pleas Court judge in February 2014, and the judge issued the requested warrant. BCI Special Agent David Pauly, and others, executed the search warrant a couple of days later and found child pornography on one of the computers in Lowe's residence. While they were there, Lowe arrived. Agent Pauly questioned Lowe but did not arrest him.

{¶ 3} A year later, in February 2015, Lowe was indicted on ten counts of pandering sexually oriented material involving a minor, in violation of R.C. 2907.322(A)(5); two counts of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(2); and one count of possession of criminal tools, in violation of R.C. 2923.24(A). Lowe filed a motion to suppress and a motion for a *Franks* hearing, and the trial court held a hearing on both motions. After the hearing, the trial court overruled the motion to suppress.

{¶ 4} Lowe pleaded no contest to all the charges. He was designated a Tier II sex offender and sentenced to community control for up to five years.[1]

{¶ 5} Lowe appealed.

## II. Analysis

{¶ 6} Lowe presents four assignments of error for our review. The first two argue that the search warrant should not have been issued. The third assignment of error argues that Agent Pauly purposely made false statements and misled Lowe into cooperating. And the fourth assignment of error argues that Lowe was in custody, so Agent Pauly should have advised him of his *Miranda* rights.

{¶ 7} "Review of a trial court's ruling on a motion to suppress is 'a mixed question of law and fact.' *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's factual findings as long as they are supported by competent, credible evidence. However, we review de novo the application of the law to these facts." (Citations omitted.) *State v. Belton*, Ohio Sup. Slip Opinion No. 2016-Ohio-1581, ¶ 100.

## A. *The search warrant*

{¶ 8} "When a motion to suppress evidence seized pursuant to a search warrant attacks the [judge]'s issuance of the warrant, the motion presents two potential issues. One, and the critical issue, is whether the affidavit for the warrant provided a substantial basis upon which the [judge] could make an independent determination that probable cause existed for the search. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76

---

[1] According to the State, and the online docket at the Montgomery County Clerk of Courts's website, the community-control sanction was revoked in May 2016, and Lowe was sentenced to four years in prison.

L.Ed.2d 527. * * * The other issue is whether the warrant process was compromised by a false statement in the warrant affidavit. *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667." *State v. Myers*, 143 Ohio App.3d 342, 347, 757 N.E.2d 1258 (2d Dist.2001). The first assignment of error here argues that there was insufficient probable cause to issue the search warrant because the information in the supporting affidavit was stale. And the second assignment of error argues that the affidavit contains material misrepresentations and omits material information.

{¶ 9} On May 16, 2013, Agent Mason used a computer program provided by the Internet Crimes Against Children Initiative to download a file containing child pornography from a device at IP address [****]. The next day, May 17, she downloaded the same file from a device at the same IP address. Agent Mason discovered that the IP address was registered to Time Warner Cable, and on September 6, she asked the Madison County Prosecutor's Office to issue a subpoena to Time Warner Cable requesting the subscriber information for the IP address. The information that Time Warner provided showed that the IP address was assigned to Carl Lowe and that his address was 205 Jackson Street, Apartment 4, in Dayton, Ohio.

{¶ 10} At the hearing, Agent Mason testified that on January 24, 2014, she and another agent visited 205 Jackson Street and performed a wireless audit of the area by using a program that could detect wireless access points. The program could identify the media access control (MAC) number of each access point and whether the access point was secured (required a password to connect) or unsecured (allowed anyone to connect). The audit showed that all the wireless access points in the area of Lowe's apartment complex were secure.

{¶ 11} Agent Mason decided to move forward with a search warrant. Using information that Mason provided, Agent Burke drafted an application for a search warrant of Lowe's apartment and drafted a supporting affidavit. Burke did not mention the wireless audit in his affidavit. He presented these documents to a Montgomery County Common Pleas Court judge on February 26, 2014, and the judge issued the requested search warrant. Two days later, on February 28, BCI agents, along with Dayton police officers, executed the warrant and searched Lowe's apartment.

### 1. Staleness

{¶ 12} As a general matter, "[a]n affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time." (Citations omitted.) *State v. Marler,* 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶ 37. But "[n]o arbitrary time limit dictates when information becomes 'stale.' The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched. If a substantial period of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband are still on the premises before the judge may issue a warrant." (Citations omitted.) *Id.*

{¶ 13} In cases of child pornography, we have held that the elapse of substantial periods of time often do not render the information in a supporting affidavit stale. In *State v. Marler,* approximately 18 months separated the police's downloading of child pornography from the defendant's computer and the issuance of the search warrant. We said that the information in the supporting affidavit was "not so stale as to render the

warrant defective." *Id.* at ¶ 39. And in *State v. Hale,* 2d Dist. Montgomery No. 23582, 2010-Ohio-2389, we concluded that information in the affidavit was not stale even though over a year had passed between the defendant's purchasing of a subscription to a child pornography website and the application for a search warrant. *Hale* at ¶ 40.

{¶ 14} In both cases, we used essentially the same rationale. Quoting the Tenth District, we noted that Ohio courts generally consider certain factors in determining whether the information contained in an affidavit is stale, including "the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident." *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 23. As the Tenth District has said, "[i]n child pornography cases, these factors are so closely intertwined that consideration of one necessarily involves consideration of the others." *Id.* Although a substantial period of time elapsed in *Marler* and *Hale*, we noted that "pornographic images may be stored on computers or computer-related items for long periods of time." *Hale* at ¶ 40. We cited the Sixth Circuit's decision in *U.S. v. Frechette*, 583 F.3d 374 (6th Cir.2009), in which the court observed that "time limitations which typically apply to more fleeting crimes do not fit child pornography, because child pornography ' "is generally carried out in the secrecy of the home and over a long period." ' " *Hale* at ¶ 28, quoting *Frechette* at 378. We also noted that "[d]ownloaded materials also often remain on computers for a lengthy period of time," *id.*, citing *Frechette* at 378, and that "digital images of pornography are easily duplicated and have an infinite life span, being recoverable even after being deleted from a computer's hard drive," *id.* at ¶ 29, citing *Frechette* at 379. "Simply put," we said in *Marler*, "the very nature of the offending images coupled with the medium by which the

images were sent support the trial court's holding that there was a 'fair probability' that evidence of criminal activity was present on [the defendant]'s computer when the warrant was issued * * *. The enduring quality of child pornography is demonstrated by the fact that such images can be stored indefinitely in the hard drive of an individual's computer." *Marler* at ¶ 41. In light of such facts, we concluded, the issuing judge can reasonably assume that the defendant retained child pornography on the same computer at the same residence he lived in when police first discovered that he had it. *Id.*

{¶ 15} In the present case, just over nine months elapsed between the downloading of the child pornography in mid-May 2013, and the search-warrant application at the end of February 2014.[2] The rationale expressed in *Marler* and *Hale* applies here. Collectors of child pornography tend to keep images for a long time, and digital images can be kept forever and can even be recovered after being deleted. Also, the place to be searched was a residence, where a collector of child pornography would likely store images. Although a substantial period of time separated the file download and the application for a search warrant, the trial court reasonably concluded that the information in the affidavit was not stale.

{¶ 16} The first assignment of error is overruled.

2. The information in the affidavit

{¶ 17} Lowe argues, in the second assignment of error, that the supporting affidavit contains material misrepresentations and omits material information. "Suppression * * * [is] an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false

---

[2] Lowe mistakenly asserts in his brief that the time was "twelve months and nine days."

except for his reckless disregard of the truth." *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

**{¶ 18}** Lowe argues that the affidavit misrepresents the facts by stating that the pornographic file was downloaded from "the *computer* at IP address [****]" (emphasis added). In fact, says Lowe, the IP address is the address of his cable modem. At the hearing, Lowe's expert testified that it is the modem that actually connects to the internet. A device—be it a computer, tablet, or other such device—accesses the internet by connecting to the modem.[3] Indeed, multiple devices could connect to the modem and access the internet simultaneously. Any connecting device would use the modem's IP address as its public (as opposed to private) IP address to communicate on the internet. So if multiple devices access the internet through the modem at the same time, they all would have the same public IP address—the address assigned to the modem.

**{¶ 19}** For search-warrant purposes, though, we think that this is a distinction without a difference. The question for the issuing judge was whether a fair probability existed that child pornography, or evidence of the same, would be found in the apartment. The specific type of device and who owned it was not nearly so important as the fact that there was a device and it was likely in the residence. The important facts are that child pornography was obtained from some device communicating on the internet using the IP address assigned to Lowe at 205 Jackson Street, Apartment 4. And it is reasonable to think that it was fairly probable that the device would be in the apartment.

---

[3] We recognize the difference between a modem and a router and that, technically, it may be the router that provides some of the functions that we mention. But to keep things simple, we refer only to the modem.

{¶ 20} As to what the affidavit omits, Lowe says that it should have stated that a wireless audit of the area was done and that his cable modem, specifically, the modem's MAC number, was not detected.

{¶ 21} The information given by Time Warner in response to the subpoena included "Additional Subscriber Info: CM: [****.]" Lowe's expert testified that this was likely the MAC number for Lowe's cable modem. Neither Agent Burke nor Agent Mason knew if this was true. There is no evidence that the MAC number of Lowe's modem was obtained from the modem itself. The trial court assumed, without finding, that the above number was the MAC number of Lowe's cable modem. The court then found that the inability to detect the modem was immaterial. The court noted that a device could have connected to the modem with a physical cable instead of wirelessly. The court also noted that it was possible that the wireless feature of the modem was simply turned off at the time that the wireless audits were conducted. We agree that the wireless audit and results were immaterial. Assuming that Lowe's modem had a wireless feature, it is a trivial matter to turn that feature off.

{¶ 22} Lowe also says that the affidavit does not state whether, at the time Agent Mason downloaded the pornographic file, his cable modem was secured or unsecured. The issue here is that if Lowe's modem had a wireless feature and if it were not secured with a password, anyone in the area could have connected to it. Which would mean that the pornographic file could have been downloaded from a device located outside Lowe's apartment. There is no evidence that Lowe's modem ever operated as an unsecured wireless access point. Therefore we do not think that this information was material.

{¶ 23} The second assignment of error is overruled.

### B. *Custody*

{¶ 24} Skipping over the third assignment of error for the moment, Lowe argues in the fourth assignment of error that when Detective Pauly questioned him he was in custody for *Miranda* purposes, so Pauly should have advised him of his *Miranda* rights.

{¶ 25} The *Miranda* warnings are required only if there is custodial interrogation of the suspect. *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 25, citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "The determination whether a custodial interrogation has occurred requires an inquiry into 'how a reasonable man in the suspect's position would have understood his situation.' * * * The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *State v. Biros*, 78 Ohio St.3d. 426, 678 N.E.2d 891 (1997), quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L.Ed.2d 1275 (1983). The test is entirely objective—what the interrogator and the defendant believed is irrelevant.

{¶ 26} Here, Agent Pauly met Lowe outside the apartment complex. Pauly asked Lowe if he would like to speak with him, and Lowe said that he would. Pauly and Lowe got into Pauly's truck, and Pauly told Lowe about the search. He told Lowe that he was not under arrest and that he could leave at any time. Agent Pauly said that he just wanted to talk to Lowe and that Lowe did not have to answer any questions. After about ten minutes, Lowe said that he needed to use the bathroom. Lowe invited Pauly to go up to his apartment together so that he could use the bathroom there and they could continue talking. Agent Pauly patted Lowe down before he went into the bathroom and told Lowe to keep the door open. After Lowe finished in the bathroom, he and Agent Pauly sat down

at the kitchen table and continued talking. Agent Jim Ciotti (Pauly's supervisor) was there too. The three men talked for 15 or 20 minutes before Pauly and Ciotti left—without arresting Lowe.

{¶ 27} Lowe says that during the questioning he was not free to leave. He cites Agent Pauly escorting him to the bathroom, patting him down, and requiring him to keep the bathroom door open. Lowe also points out that no neutral party was ever present during the questioning. Lastly, Lowe says that when his cell phone rang while in Agent Pauly's truck, Pauly instructed Lowe to answer it, rather than giving him the choice.

{¶ 28} The trial court concluded that a reasonable person in Lowe's situation would not have thought that he was in police custody during the questioning. We agree. Agent Pauly told Lowe he was not under arrest and that he was free to leave. The questioning occurred in Agent Pauly's unmarked vehicle and in Lowe's apartment. Lowe was not handcuffed, his freedom to end the interview was not restricted, he was not physically or verbally intimidated or threatened during the questioning, and the agents did not overpower, trick, or coerce Lowe into making a statement. We agree with the trial court that the fact that Lowe was a suspect and that no neutral parties were present do not overcome the factors suggesting that he was not in custody. The same may be said of Agent Pauly telling Lowe to answer the phone. We also agree with the trial court that the pat-down before Lowe used the bathroom did not render him in custody for *Miranda* purposes.

{¶ 29} The fourth assignment of error is overruled.

B. *Improper inducement*

{¶ 30} In the third assignment of error Lowe argues that Agent Pauly purposely misled him into cooperating, improperly inducing Lowe to forgo his right to counsel and his right to remain silent.

{¶ 31} Even if *Miranda* warnings are not required, a defendant's statement may be involuntary and subject to suppression. *State v. Stringham*, 2d Dist. Miami No. 2002-CA99, 2003-Ohio-1100, ¶ 10. A statement is involuntary if, considering the totality of circumstances, the defendant's "will was overborne by the circumstances surrounding the giving of his confession." *Id.* at ¶ 11, citing *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶ 32} Here, Lowe says that during their conversation in Agent Pauly's truck, Pauly repeatedly made statements that led Lowe to believe that child pornography was not the focus of the search. Lowe testified that Pauly told him that they were not interested in what was on his computer but only whether children were being harmed. Lowe said that these statements led him to believe that he would not be charged in connection with having the child pornography.

{¶ 33} The trial court gave two reasons for why Lowe was not intentionally misled:

* * * First, there is no indication the agents inaccurately stated their primary concern because one's primary concern—when comparing possession of child pornography to sexual conduct with a minor—would be the sexual conduct. If the agents' desire was to trick Mr. Lowe into an admission regarding his possession of child pornographic material, then asking Mr. Lowe about sexual conduct with a minor—obviously a more

serious matter—would be an odd, seemingly counterproductive approach. The court cannot conclude, under the totality of circumstances, that the agents' "primary concern" remarks acted to overcome Mr. Lowe's will, and, thus, prompted him to make the statements sought to be suppressed.

The second reason Mr. Lowe's argument fails is that the agents' "primary concern" conversation, assuming its purpose was to obtain a confession regarding stored images, did not work to obtain such a confession. Mr. Lowe—from the interview's inception to its termination— was steadfast in his assertion he had no knowledge of child pornographic images on his computer. It cannot be concluded, given this, that the "primary concern" comments, or any other action taken by the agents, acted to overcome Mr. Lowe's will. Mr. Lowe's statements, in short, were voluntarily made, eliminating any basis upon which to suppress his statements.

*Entry and Order Overruling Defendant's Motions to Suppress Search Warrant Evidence and Statements*, 7 (Aug. 28, 2015). The trial court concluded Lowe made his statements voluntarily. We agree.

{¶ 34} The third assignment of error is overruled.

### III. Conclusion

{¶ 35} We have overruled each of the four assignments of error presented. Therefore the trial court's judgment is affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Meagan D. Woodall
V. Gayle Miller
Montgomery County Common Pleas Court
c/o Hon. Mary K. Huffman, Administrative Judge