[Cite as *State v. Elliott*, 2023-Ohio-388.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-4 |
| | : | |
| v. | : | Trial Court Case No. 21-CR-00197 |
| | : | |
| BYRON A. ELLIOTT | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 10, 2023

. . . . . . . . . . .

R. KELLY ORMSBY and DEBORAH S. QUIGLEY, Attorneys for Appellee

H. MICHELE THOMAS, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Byron A. Elliott appeals from his conviction following a no-contest plea to charges of rape and pandering obscenity involving a minor.

{¶ 2} In his sole assignment of error, Elliott challenges the trial court's overruling of his motion to suppress a confession he made to a detective and pictures the detective

found on his cell phone. Elliott contends the confession and photographs were obtained in violation of his rights under *Miranda v. United States*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Elliott also claims coercive conduct by the detective rendered his confession involuntary even if *Miranda* did not apply.

{¶ 3} We find no *Miranda* violation because Elliott was not in custody when he made his confession and gave the detective access to the pictures on his cell phone. We also conclude that Elliott's confession was voluntary and not a product of police coercion. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} Detective Christopher Clark visited a school on November 2, 2021 to investigate a report of a 12-year-old student telling friends that Elliott, her father, had been touching her. Upon arriving at the school, Clark interviewed the student in the principal's office. The detective was dressed in plain clothes—a pair of khaki pants and a pullover top—with his badge and gun covered. After speaking with the child, Clark texted Elliott's girlfriend and asked her to come to the school with Elliott.

{¶ 5} Elliott and his girlfriend arrived shortly thereafter, and Elliott agreed to speak with the detective in the principal's office. The office door was closed during the interview, which was audio recorded. At the outset, Clark advised Elliott of the nature of the allegations. When Clark mentioned Elliott's cell phone, Elliott responded by giving the detective permission to examine it. Elliott gave the detective passcodes to the phone and to an app that stored photographs on it. Clark and Elliott then walked together to Elliott's vehicle to retrieve the phone.

{¶ 6} After returning to the principal's office with Elliott, the detective began examining the phone. He found eight deleted pictures in the "trash" area of the phone. Two of them were pictures of Elliott's daughter's breasts. The other six were pictures of the girl's vagina. When confronted with the pictures, Elliott initially denied having taken them. In response, Detective Clark pointed out a hand that was visible in some of the pictures. A ring on the hand was identical to a ring Elliott was wearing during the interview. Following this observation about the ring, Elliott made what was characterized at a suppression hearing as "some type of confession." Clark then read Elliott his *Miranda* rights. The two men proceeded to speak for a few more minutes before the detective placed Elliott under arrest. The entire interview lasted approximately 40 to 45 minutes.

{¶ 7} On November 18, 2021, an indictment was filed charging Elliott with one count of rape of a child under age 13 and six counts of pandering obscenity involving a minor. Elliott filed a suppression motion on December 15, 2021. He sought suppression of the incriminating pictures found on his cell phone and his confession. The trial court held a January 21, 2022 hearing on the motion. The only witness was Detective Clark, who testified consistent with the facts set forth above. The trial court overruled the suppression motion in a February 22, 2022 decision and entry. It held that *Miranda* did not apply because Elliott had not been in custody when he allowed Clark to examine his phone and made his confession. The trial court also rejected Elliott's argument that his confession was involuntary without regard to *Miranda*.

{¶ 8} Elliott subsequently agreed to plead no contest to an amended charge of rape that omitted a reference to the victim's being under age 13. He also agreed to plead

no contest to one count of pandering obscenity involving a minor. In exchange, the State agreed to dismiss the other pandering-obscenity charges. The parties jointly recommended consecutive prison terms of 10 years for rape and five years for pandering obscenity, with an understanding that this would be the minimum sentence under the Reagan Tokes Act. The trial court accepted Elliott's plea and made findings of guilt.[1] It imposed an indeterminate prison term of 10 years minimum to 15 years maximum for rape with a consecutive five-year term for pandering obscenity.

## II. Analysis

{¶ 9} In his sole assignment of error, Elliott contends the trial court erred in overruling his suppression motion. He asserts that the protections of *Miranda* did apply to his interview with Detective Clark because it was a custodial interrogation. He also argues that his confession was involuntary under the totality of the circumstances.

{¶ 10} When ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Thus, when an appellate court reviews a suppression decision, it must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the

---

[1] Elliott's plea form contained a handwritten notation on the caption indicating that it was a no-contest plea. The actual text of the form, including a recitation of the parties' plea agreement, repeatedly referred to the plea as a guilty plea. In its final judgment entry, the trial court also referred to the plea as a guilty plea. The trial court later filed a nunc pro tunc final judgment entry, however, clarifying that Elliott had pled no contest.

applicable legal standard." *Id.*

{¶ 11} With the foregoing standards in mind, we agree with the trial court that the protections provided by *Miranda* did not apply to Elliott's interview prior to his formal arrest by Detective Clark. *Miranda* warnings are required only when a custodial interrogation occurs. *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 25. "The determination whether a custodial interrogation has occurred requires an inquiry into 'how a reasonable man in the suspect's position would have understood his situation.' * * * 'The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *State v. Biros*, 78 Ohio St.3d 426, 678 N.E.2d 891 (1997), quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984), and *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L.Ed.2d 1275 (1983). "The test is entirely objective—what the interrogator and the defendant believed is irrelevant." *State v. Lowe*, 2d Dist. Montgomery No. 26994, 2017-Ohio-851, ¶ 25.

{¶ 12} This court has identified various non-exclusive factors as being relevant to whether a custodial interrogation has occurred. They include: "1) the location where the questioning took place; 2) whether the defendant was a suspect at the time the interview began (bearing in mind that *Miranda* warnings are not required simply because the investigation has focused); 3) whether the defendant's freedom to leave was restricted in any way; 4) whether the defendant was handcuffed or told he was under arrest; 5) whether threats were made during the interrogation; 6) whether the defendant was physically intimidated during the interrogation; 7) whether the police verbally dominated

the interrogation; 8) the defendant's purpose for being at the place where the questioning took place; 9) whether neutral parties were present at any point during the questioning; and 10) whether the police took any action to overpower, trick, or coerce the defendant into making a statement. *State v. Dunn*, 2d Dist. Clark No. 2008-CA-20, 2009-Ohio-3304, ¶ 18.

{¶ 13} Here there was no formal arrest until after Detective Clark found incriminating pictures on Elliott's cell phone and Elliott made a confession. Prior to the detective's discovery of the pictures and the confession, there was no meaningful restraint on Elliott's freedom of movement. He voluntarily came to the school accompanied by his girlfriend. Once there, he agreed to speak with Detective Clark, who immediately informed him of the interview's purpose. Although the principal's office door was closed, Clark testified that it was merely for privacy purposes. Clark identified himself as a detective, but he was dressed in plain clothes and was not displaying a badge or weapon. Elliott was a suspect, but he was not handcuffed prior to his confession and the detective's discovery of the pictures, and his ability to leave the office was not restricted. Clark also did not threaten, intimidate, dominate, overpower, coerce, or trick Elliott during the interview, which was conversational in tone. We note too that Elliott's confession occurred approximately 26 minutes into the interview, which was not particularly lengthy.

{¶ 14} On appeal, Elliott stresses that Clark accompanied him to his car to retrieve the cell phone. We are unpersuaded, however, that this act by the detective would have caused a reasonable man in Elliott's position to believe there was a restraint on his freedom of movement to a degree associated with a formal arrest. The record reflects

that Clark simply walked to the car with Elliott and then accompanied him back to the principal's office. Although it is immaterial to our decision, one obvious possible reason for the detective's action was to see whether Elliott deleted anything from the phone before handing it over. In any event, based on our review of the suppression-hearing transcript, we agree with the trial court's finding that Elliott was not in custody when Clark discovered the incriminating pictures and Elliott made his confession. Therefore, the trial court correctly found *Miranda's* protections inapplicable up to that point.

**{¶ 15}** Even where *Miranda* does not apply, however, a statement may be involuntary and subject to suppression if it is a product of actual police coercion. *State v. Nevarez-Reyes*, 2d Dist. Montgomery No. 27047, 2017-Ohio-2610, ¶ 31. When deciding whether a confession was involuntarily induced, a court should consider the totality of the circumstances, which include things such as " 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' " *Id.* at ¶ 33, quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *vacated in part on other grounds*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

**{¶ 16}** Here the record does not reflect that Elliott's will was overborne during his interview or that his statements were the product of any coercion. To the contrary, Elliott was not pressured, threatened, intimidated, or otherwise coerced during the interview, which was relatively short. Elliott, who was 33 years old, was not mistreated or deprived of anything. Detective Clark did not make any false representations and did not display

any aggressive show of authority. The record also does not reflect anything about Elliott's mentality that would make him susceptible to giving an involuntary confession.

**{¶ 17}** On appeal, Elliott complains only that Clark exceeded the scope of Elliott's consent by searching for deleted pictures on his phone and by continuing to ask questions and showing him the incriminating photos until he confessed. But nothing in Clark's suppression-hearing testimony suggests that Elliott limited the scope of his consent to a search for pictures that had not been deleted. Moreover, we see no impermissible coercion in the detective's act of confronting Elliott with incriminating pictures and pointing out that Elliott's own ring could be seen in some of them. Elliott appears to have decided to confess after being confronted with this irrefutable evidence. Under these circumstances, the trial court correctly found that the confession was voluntary.

**{¶ 18}** Elliott's assignment of error is overruled.

### III. Conclusion

**{¶ 19}** The judgment of the Darke County Common Pleas Court is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and EPLEY, J., concur.