[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14592

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 28, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00119-CR-FTM-29-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK LEWIS SCHWINN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 28, 2010)

Before EDMONDSON and PRYOR, Circuit Judges, and CAMP,[*] District Judge.

_____

[*] Honorable Jack T. Camp, United States District Judge for the Northern District of
Georgia, sitting by designation.

PER CURIAM:

Appellant-Defendant Mark Schwinn was convicted of possessing child pornography. On appeal, he argues that the district court erred by not suppressing the evidence of possession of child pornography obtained from his residence.[1] He contends that the affidavit supporting the warrant did not demonstrate probable cause when the warrant issued and that the warrant did not specify with sufficient particularity the place to be searched.

We conclude that the search of Schwinn's residence did not violate the Fourth Amendment. We affirm the conviction.

## I. BACKGROUND

U.S. Immigration and Customs Enforcement began investigating Schwinn after getting his name from Operation Flicker, a national investigation of child pornography websites. Investigators determined that from September to mid-

---

[1]Schwinn also argues that the district court erred during sentencing by imposing the statutory enhancement for a prior conviction set forth in 18 U.S.C. § 2252(b)(2) when Schwinn did not admit the prior conviction and the government did not allege it in the indictment. This contention is foreclosed by binding precedent. Almendarez-Torres v. United States, 118 S. Ct. 1219, 1222 (1998); United States v. Orduno-Mireles, 405 F.3d 960, 963 (11th Cir. 2005).

October 2006, someone using Mark Schwinn's name, address, and credit card purchased four different memberships to websites containing child pornography. Investigators also determined that Mark Schwinn was a registered sex offender in the State of Florida: a result of a 1998 conviction in Illinois for aggravated sexual abuse of a minor.

Ten months after the last website purchase, investigators obtained a search warrant for Schwinn's residence; and investigators seized two computers and miscellaneous computer media from Schwinn's bedroom. Later investigation revealed that some of these things contained pornographic images of children.

Schwinn was indicted for possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5) and 2252(b)(2). Schwinn filed a motion to suppress the evidence recovered from his residence, contending, among other things, that the probable cause supporting the search warrant was stale and that the warrant violated the Particularity Clause. The district court granted in part and denied in part the motion. Schwinn then entered a conditional guilty plea pursuant to a written plea agreement, reserving the right to appeal the denial of part of the motion to suppress. This appeal followed.

## II.  STALENESS CHALLENGE TO PROBABLE CAUSE

Schwinn contends that the information contained in the affidavit supporting the search warrant was stale and otherwise inadequate to establish probable cause. Despite excluding some portions of the affidavit from its consideration, the district court concluded that adequate probable cause supported the issuance of a warrant.

### A.      Relevant Portions of Affidavit

In support of the search warrant application, an ICE Special Agent provided an affidavit with this information: A national investigation named Project Flicker uncovered approximately 18 different member-restricted websites containing child pornography.  A thirty-day membership to each of four different identified websites was purchased between 29 September 2006 and 14 October 2006 from a single IP address.[2]  In each instance, the purchaser supplied an email address of "varland2004@aol.com,"  a credit card billing name of "Mark Schwinn," and a credit card billing address of "1903 Mark Avenue, Apartment #302, Punta Gorda,

---

[2]We reject Schwinn's argument that the affidavit only indicated that Schwinn had signed up for subscriptions to two, as opposed to four, websites.  The affidavit clearly asserts that Schwinn "purchased at least four memberships to these child pornographic websites."

Florida 33950."

The affidavit included information from Project Flicker describing the content of two of the websites; several images on each website were described in detail as being child pornography. The affiant personally viewed a copy of one of the websites; it had the title "Home Collection - Secret members area" and made several clear references to child pornography. The website contained links stating "Enjoy! New preteen movies...uploaded 8GB of views in new Young-Bang section" and "Here you can read 100 child porn texts," as well as the statement "[W]elcome to my private child porn collection, I collected it from many Internet sites...it's the biggest collection on the web!"

By checking public and non-public databases, the affiant discovered that Florida issued Mark Lewis Schwinn a Driver's License in 2005, with an address of "1903 Mark Avenue #302 in Punta Gorda, Florida." In response to a subpoena, AOL advised that screen name "varland2004" is billed to a Mark Schwinn of "1903 Mark Avenue in Punta Gorda, Florida," and that the account had been active since 2005. The phone number on file with AOL was the same as the one provided when registering for the Home Collection website. The affiant also noted that Mark Schwinn is a registered sex offender in Florida because of a 1998 conviction in Illinois for aggravated criminal sexual abuse of a minor.

The affiant disclosed that, although surveillance agents monitoring the Mark Avenue address did not observe Schwinn directly, they conducted an interview with a neighbor who identified Unit #302 as being occupied by "Mark" and "Rose." About the apartment itself, "[t]he unidentified neighbor described Unit #302 as having two occupants but was designed to have three people live there in three separate bedrooms that share a common kitchen and bath."

The affiant also made several experience-based declarations. He noted that, among other things, "[t]he majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery their collections of illicit materials." In discussing the need for agents to seize Schwinn's computers for analysis in ICE's Computer Forensic Laboratory, the affiant noted that "data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even 'hidden,' erased, compressed, password-protected, or encrypted files."

B.    Legal Framework

We review de novo whether probable cause existed, giving due weight to

6

reasonable inferences drawn by the issuing magistrate. United States v. Kapordelis, 569 F.3d 1291, 1308-09 (11th Cir. 2009). "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 1310 (quoting Illinois v. Gates, 103 S. Ct. 2317, 2332 (1983)). "For probable cause to exist, however, the information supporting of the government's application for a search warrant must be timely, for probable cause must exist when the magistrate judge issues the search warrant." United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). When reviewing so-called staleness challenges, "we do not apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate, rather, we review each case based on the unique facts presented." Id. "In this case-by-case determination we may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id.

Affidavits supporting a search warrant are presumed valid. Franks v. Delaware, 98 S. Ct. 2674, 2684 (1978). Criminal defendants have a limited right to challenge the affidavit's veracity. See United States v. Novaton, 271 F.3d 968, 986 (11th Cir. 2001). Under Franks, if a defendant makes a threshold showing that

7

the affiant deliberately or recklessly made a false statement, the defendant is entitled to a hearing; if that threshold showing of deliberate or reckless falsity is then proved by a preponderance of the evidence, the defendant is entitled to a new evaluation of probable cause with the affidavit stripped of the false statements. Franks, 98 S. Ct. at 2684-85. A defendant is entitled to no relief from an innocent or merely negligent misstatement. Maughon v. Bibb County, 160 F.3d 658, 660 (11th Cir. 1998).

This case comes to us in an unusual posture. After reviewing a hearing before a magistrate judge on Schwinn's motion to suppress, the district court, "[i]n an abundance of caution," "excluded the affiant's experience-based opinions about collectors, since there was minimal evidence that Schwinn was a collector and at least one inaccurate statement in [that] portion of the Affidavit." The district court did not conclude that Schwinn met his burden under Franks; indeed, the district court conducted no Franks analysis at all. We accept as not clearly erroneous the district court's determination that one of the experience-based statements was inaccurate. But because Schwinn did not allege -- much less prove -- that the affiant made the inaccurate statement intentionally or recklessly, we will consider all of the experience-based statements in our de novo review.[3]

_____

[3]In the district court, Schwinn only argued that the Agent's testimony at the evidentiary hearing on the motion to dismiss "cast[s] substantial doubt on the accuracy of" one of the

8

C.    Discussion

The affidavit presents probable cause to search the residence of Mark Schwinn for evidence that he received or possessed child pornography; the probable cause was not stale when the warrant issued.

The evidence before the magistrate revealed that someone signed up for four websites which either the pertinent Agent or Project Flicker determined to contain child pornography; the person who signed up for the websites knew Schwinn's name, address, phone number, email address, and credit card information. Evidence that the person who signed up did so with Schwinn's contact information and his confidential credit card information, coupled with Mark Schwinn's status as a registered sex offender stemming from a conviction for a sex offense with a minor, makes it probable that Mark Schwinn was indeed the person who subscribed to the websites. Evidence that a person paid for access to multiple websites determined to contain child pornography -- at least one of which had conspicuous descriptions identifying the website's content as, at least in part,

experience-based declarations about collectors. Schwinn then broadly cited Franks for the proposition that an "inaccurate statement in a search warrant must be stricken from consideration in assessing probable cause," without mentioning that this statement is only accurate if the statement was made recklessly or intentionally.

9

containing child pornography -- supports the inference that the person used the websites and therefore possessed some of the contents of those websites. See United States v. Frechette, 583 F.3d 374, 379-81 (6th Cir. 2009); United States v. Wagers, 452 F.3d 534, 540 (6th Cir. 2006); United States v. Martin, 426 F.3d 68, 77 (2d Cir. 2005).

Although probable cause existed to search Schwinn's apartment around the time he signed up for access to the websites, this conclusion does not necessarily mean probable cause was present when the warrant issued 10 months later. See Harris, 20 F.3d at 450. Because a lengthy delay can arise between the discovery of the evidence of child pornography possession and the execution of a search warrant, investigators and courts frequently rely upon an inference that the suspect is a collector of child pornography -- and therefore is unlikely to dispose of his images -- to establish that evidence of a crime will be present at some point in the future. See e.g., United States v. Lemon, 590 F.3d 612, 614-15 (8th Cir. 2010) (affirming search warrant in child pornography case when evidence to support warrant was 18 months old). The affidavit provided to the magistrate here included declarations about the profile of child pornography collectors, but did not include an averment that Schwinn was himself a collector. Nevertheless, the magistrate was entitled to infer that Schwinn was a collector based on other

10

information in the affidavit, including his status as a sex offender and the alleged pattern of purchasing brief memberships to multiple websites containing child pornography.[4] See United States v. Pappas, 592 F.3d 799, 803-04 (7th Cir. 2010) ("[W]here evidence indicates that an individual has uploaded or possessed multiple pieces of child pornography, there is enough of a connection to the 'collector' profile to justify including the child pornography collector boilerplate in a search warrant affidavit.").

These facts and inferences taken together fairly allowed the magistrate to conclude that Schwinn collected child pornography. The averment that collectors of child pornography rarely dispose of it and the additional averment that computer forensic techniques can recover even deleted files allowed a conclusion that a fair probability existed that evidence of child pornography remained after 10 months. See Frechette, 583 F.3d at 378-79 (concluding that probable cause was not stale based on 16-month-old evidence in child pornography case with similar facts).

---

[4]We recognize that this inference is not the only inference that can be drawn from Schwinn's online activities. But the inference is a reasonable one. See United States v. Harris, 20 F.3d 445, 451 (11th Cir. 1994) (affirming a finding of probable cause when information in the affidavit "supported the reasonable inference that criminal activity was continuing"); United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000) ("[I]t is well established that a judge may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant . . . .").

## III. CHALLENGE TO THE WARRANT'S DESCRIPTION OF THE PLACE TO BE SEARCHED

Schwinn contends that the warrant violated the Fourth Amendment's Particularity Clause because it authorized the search of "Unit #302" as if it was a single dwelling when it was, in fact, a collection of individual efficiencies (that is, separate bedrooms with shared facilities for washing and cooking). He also contends that because the officer that sought the warrant knew that Unit #302 contained more than one dwelling, the warrant itself was void and the district court should have suppressed all evidence obtained from the search. The district court agreed that the warrant violated the Particularity Clause, but determined that the appropriate remedy was the exclusion of only the evidence (nothing incriminating) obtained from an unoccupied bedroom in the unit. The government contends that the warrant did not violate the Particularity Clause and that, even if it did, the district court granted an adequate remedy. We conclude that the Fourth Amendment was not violated: the warrant was valid when issued and the officers executed the search reasonably; Schwinn was therefore entitled to no remedy at all.

"At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 81 S. Ct. 679, 683 (1961). Therefore,

12

searches inside the home without a warrant are presumptively unreasonable.  <u>Groh</u>

<u>v. Ramirez</u>, 124 S. Ct. 1284, 1290-91 (2004).  Whether a search conducted

pursuant to a warrant is lawful requires consideration of two issues: the validity of

the warrant itself and the reasonableness with which the officers executed the

search.  <u>Maryland v. Garrison</u>, 107 S. Ct. 1013, 1016 (1987).


A.     Validity of the Warrant


A warrant may not issue except upon a showing of probable cause. U.S.

CONST. amend. IV. "Probable cause to support a search warrant exists when the

totality of the circumstances allow a conclusion that there is a fair probability of

finding contraband or evidence at a particular location."  <u>United States v.</u>

<u>Martinelli</u>, 454 F.3d 1300, 1307 (11th Cir. 2006) (citation omitted).  A warrant

must also "particularly describe[] the place to be searched."  U.S. CONST. amend.

IV.  "A warrant's description of the place to be searched is not required to meet

technical requirements or have the specificity sought by conveyancers.  The

warrant need only describe the place to be searched with sufficient particularity to

direct the searcher, to confine his examination to the place described, and to advise

those being searched of his authority."  <u>United States v. Burke</u>, 784 F.2d 1090,

1092 (11th Cir. 1986).  An officer must be able to ascertain the place the warrant commands him to search with reasonable effort.  Steele v. United States, 45 S. Ct. 414, 416 (1925).  "The manifest purpose of this particularity requirement was to prevent general searches."  Garrison, 107 S. Ct. at 1016.  A warrant is invalid if it issues without a showing of probable cause, Herring v. United States, 129 S. Ct. 695, 701 (2009), or if it lacks a sufficiently particular description, Groh, 124 S. Ct. at 1289-90.[5]

Schwinn's contention is not that the warrant inaccurately described the place to be searched (Unit #302), but that it authorized the search of an area broader than appropriate.  We think this issue is properly characterized as one of probable cause, not particularity.  See United States v. Whitney, 633 F.2d 902, 907 (9th Cir. 1980).  The validity of a warrant is determined when it issues on "the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate."  Garrison, 107 S. Ct. at 1017.  As long as probable cause existed to search the entire area described in the warrant (Unit #302) when the warrant issued, the warrant is valid.  Facts learned after the search has begun do not retroactively make the warrant invalid, although, of course, with the new information in hand, the officers executing the warrant must do so reasonably.  Id.

_____

[5]Even if a warrant is invalid, law enforcement's good-faith reliance on it may prevent the application of the exclusionary rule.  See United States v. Leon, 104 S. Ct. 3405, 3420 (1984).

14

at 1016-18.

As the district court recognized, difficulty can arise when a warrant authorizes the search of a structure with multiple, independent units: these warrants run the risk of having a description that is not narrow enough to be supported totally by the showing of probable cause. But let's look at this case. If at the time the warrant issued there was reason to believe that the defendant had access to all of the rooms within Unit #302[6] or that Unit #302 was used as a single shared residence,[7] the search of the location described by the warrant (Unit #302) was supported by the showing of probable cause, and the warrant was valid. That a dwelling might be shared with others is not, by itself, enough to require officers to exclude portions of that dwelling from the warrant's scope: probable cause often exists to search the entire dwelling because it is reasonable to assume that the suspect has access to the entire dwelling. See United States v. Ayers, 924 F.2d 1468, 1480 (9th Cir. 1991).

Here, the affidavit informed the magistrate that the surveillance team had learned from an interview with a neighbor that "Mark" and "Rose" lived in Unit #302; it also stated that "[t]he unidentified neighbor described Unit #302 as having

---

[6]See United States v. Butler, 71 F.3d 243, 248-49 (7th Cir. 1995); United States v. Gonzalez, 697 F.2d 155, 156 (6th Cir. 1983).

[7]See United States v. Ofshe, 817 F.2d 1508, 1514 (11th Cir. 1987) (multiple businesses sharing a single building); United States v. Santore, 290 F.2d 51, 66-67 (2d Cir. 1960).

15

two occupants but was designed to have three people live there in three separate bedrooms that share a common kitchen and bath."  Based on this information, the issuing magistrate concluded probable cause existed to search the entire apartment described in the affidavit and warrant.  This decision is entitled to great deference. Gates, 103 S. Ct. at 2331.  Later, the district court determined that the warrant violated the Particularity Clause because the officer-affiant "admittedly did know that Unit #302 contained multiple dwelling units."  In making this determination, the district looked to the affidavit and the testimony of the affiant, which the district court summarized this way:

> The affiant testified that prior to obtaining the search warrant surveillance officers had spoken with a neighbor who stated that there was a possibility that a female lived in the apartment with defendant, although the affiant did not know if this was together or separately. The neighbor had informed the officer that after Hurricane Charlie some of the units had been turned into three bedroom efficiency apartments, i.e., that the three bedrooms would have been separate and housed other individuals, and there were common areas used by all. The neighbor said that a "Mark" and a "Rose" lived there, but the affiant did not know if they lived there together, or shared all three bedrooms, or were splitting it into efficiencies, and the officers did not follow up on such details in case the neighbor knew those people. The affiant summarized that what he knew was that Unit # 302 was one apartment complex with three bedrooms which could possibly be rented out by themselves, sharing common areas. The affiant related to the search team members that there could be a situation where the other units would not be part of defendant's unit.

> Despite this knowledge, the affiant sought and the search warrant authorized a search of "1903 Mark Avenue, Unit # 302, Punta Gorda, Florida 33950, more particularly described in Attachment A." Attachment A to the Search

16

Warrant described the premises as "1903 Mark Avenue, Apartment # 302, Punta Gorda, Florida 33950-4239 . . . A two-story apartment complex with light green concrete walls and a red roof located at the intersection of Mark Avenue and Charlotte Street in Punta Gorda, Florida. Unit # 302 is located in the center exterior hallway of the building and can be seen from Mark Avenue looking south toward the building. The unit has a red door with "302" in black numbers. Mark Avenue is located just northwest of the intersection of Interstate 75 and Highway 17." The affiant testified that his understanding of the search warrant was that it authorized the search all of "Unit 302," including all three bedrooms.

United States v. Schwinn, No. 2:07-CR-119, 2008 WL 782520, at *5-6 (M.D. Fl. Mar. 21, 2008) (internal record citations omitted). To the extent the quoted sentences constitute findings of fact about what the officers knew, we accept the findings as not clearly erroneous. But we do not see from the record or what the district court wrote that the officers knew, or should have known,[8] when they applied for the warrant that the defendant lacked access to any of the rooms in Unit #302. So we conclude that on the basis of that knowledge, the magistrate correctly concluded that probable (not certain) cause existed to search all of Unit #302 and that the officers were therefore not legally obligated to exclude part of that unit from the scope of the requested warrant.

As the district court noted, the neighbor informed the surveillance officers

---

[8]Given the circumstances, we conclude that the law did not require the officers to investigate further about how Schwinn was precisely residing in Unit #302 before applying for the warrant.

that there was a possibility that a female lived in Unit #302 with Schwinn. The affiant did not know whether this meant they lived together in the same bedroom, used different bedrooms, or split the apartment into efficiencies; what the affiant knew was that there was one apartment with common areas and three bedrooms which could possibly be rented out individually. In addition, all records in the investigation pointed to an address of 1903 Mark Avenue, #302, without any further narrowing identification. To us this situation is materially indistinguishable from that of any other apartment shared by roommates. Based on the information the officers knew when the warrant issued, it was not unreasonable for them to believe -- or for the magistrate to accept -- that there was a fair probability that evidence of Schwinn's crime could be found in any room within Unit #302.

Because there was probable cause covering Unit #302 at the time the warrant issued, the district court was mistaken when it held that the warrant violated the Particularly Clause. The warrant was valid when it was issued.

B.    Reasonableness of the Warrant's Execution

As well as possessing valid warrant, the officers executed the search reasonably. See Garrison, 107 S. Ct. at 1017-19. The officers entered through

18

what appeared to be the front door to Unit #302, a red exterior door marked with "302" in black letters. Upon entering, the officers found that the door actually opened directly into Schwinn's bedroom. Once inside, the search team discovered the apartment consisted of three bedrooms and a shared common dining room, bathroom, and kitchen. Of the two other bedrooms, one was locked; and the other had an open door and appeared to be used for storage but was otherwise uninhabited.

In addition to Schwinn's bedroom, the officers searched the uninhabited bedroom and found non-incriminating items owned by Schwinn. (This evidence is the evidence suppressed by the district court.) The officers did not search the locked bedroom because Schwinn informed them that it belonged to his roommate, Willie; Schwinn claimed that he did not have access to it. Even assuming that at this point it became clear that the warrant authorized a search that was broader than permissible, the warrant was not retroactively invalidated. Garrison, 107 S. Ct. at 1017. And because the officers acted reasonably in limiting the scope of the search by excluding the locked bedroom to which Schwinn had no access, no Fourth Amendment violation occurred. See id. at 1017-19.

19

# III. CONCLUSION

The affidavit supporting the search warrant established probable cause to search Schwinn's apartment, even 10 months after the last website purchase. Even though the district court mistakenly concluded that the search warrant violated the Particularly Clause, we affirm the conviction because Fed. R. Crim. P. 52(a) directs us to disregard any "error, defect, irregularity or variance that does not affect substantial rights," and our decision today does nothing to nullify the incriminating evidence available to the prosecution when Schwinn entered his conditional guilty plea.

AFFIRMED.