*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0359p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

    *v.*

DOUGLAS FRECHETTE,

        *Defendant-Appellee.*

No. 08-2191

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00126-001—Janet T. Neff, District Judge.

Argued: August 6, 2009

Decided and Filed: October 8, 2009

Before: MOORE and ROGERS, Circuit Judges; THAPAR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Nils R. Kessler, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Helen C. Nieuwenhuis, NIEUWENHUIS LAW OFFICES, P.C., Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Nils R. Kessler, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Helen C. Nieuwenhuis, NIEUWENHUIS LAW OFFICES, P.C., Grand Rapids, Michigan, for Appellee.

    THAPAR, D. J., delivered the opinion of the court, in which ROGERS, J., joined. MOORE, J. (pp. 12-17), delivered a separate dissenting opinion.

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

_____

**OPINION**

_____

THAPAR, District Judge.  The issue in this case is whether it is probable that someone who pays approximately $80 for a subscription to a web site is likely to use that subscription.  Because we hold that it is probable, we REVERSE the district court and REMAND this case.

I.

The facts in this case are undisputed.  On April 3, 2008, Agent Craig Smith of the Bureau of Immigration and Customs Enforcement ("ICE") presented an affidavit to a magistrate judge containing the following information:

On November 26, 2007, agents learned that on January 13, 2007, the defendant paid $79.95 for a one-month subscription to a child pornography subscription web site.  Agents had previously viewed the splash pages for this web site (the pages that welcome the visitors to the web site) on December 27, 2006, and found that it contained the following photographic images of child pornography:

(1)     An image depicting two naked prepubescent females with one spreading the legs of the other to expose the genitalia to the camera in a lewd and lascivious manner;

(2)     An image of a naked prepubescent female identified as "Gayla 11 y.o." indicating her age to be eleven-years old.  She is posed with her genitalia exposed to the camera in a lewd and lascivious manner;

(3)     An image of a naked prepubescent female inserting an object into her vagina;

(4)     A blinking indicator that identifies the girls on the web site as being between five to fourteen-years of age;

(5)     The "join us now" page had images of minor females displaying their genitalia in a lewd and lascivious manner with an advertised price of $79.95 for access to the web site.

To pay for this subscription, the defendant opened a PayPal account in his own name and address.**[1]** He listed a phone number registered to the same address—8-- Van ---- Street, Muskegon, Michigan 49442—where he lived with his mother.**[2]** PayPal records indicate that January 13, 2007, was the first and last day he used this PayPal account. The defendant used his debit card with Huntington Bank to transfer $79.95 to his PayPal account.

In addition, the agent determined that Comcast owned the IP address used to access the web site and that the person who used that IP address had an email address that had been registered on January 13, 2007, to the residence located at 8-- Van ---- Street. Agent Smith also stated that based on his experience, evidence of the storage of child pornography is often present on the computer hard drives of consumers of child pornography—sometimes in multiple locations on the hard drive, some of which they may not even be aware of.

The affidavit further indicated that the defendant had a previous criminal history and was listed in the Michigan State Sex Offender Registry at the same address. At the time of the affidavit, the probation office, the postal service, and the department of motor vehicles listed the defendant at that address as well.

On April 3, 2008, Agent Smith presented the affidavit to a magistrate judge, who determined that probable cause existed that evidence could be found at 8-- Van ----

---

**[1]**PayPal is an internet service to pay for transactions online. It effectively serves as an internet bank account.

**[2]**Out of privacy concerns, the court has removed the exact address.

Street, and thus issued a search warrant.  Upon executing the search warrant on April 8,

2008, the agents recovered images of child pornography from the defendant's computer.

The defendant also confessed to possessing child pornography during an interview with

an agent.  On May 14, 2008, a federal grand jury indicted the defendant on two counts

related to the receipt, 18 U.S.C. § 2252(a)(2)(A), and possession, 18 U.S.C.

§ 2252(a)(4)(B), of child pornography.

On September 12, 2008, the district court held a hearing on the defendant's

motion to suppress the evidence.  The district court suppressed the evidence because it

found that the evidence of the January 13, 2007, subscription was stale, and in turn that

the affidavit lacked a "link between the factual basis and the conclusion that there was

a fair probability that evidence of a crime would be found at the defendant's home or on

the computer."

II.

As a preliminary matter, stale information cannot be used in a probable cause

determination.  *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citing W.

LaFave, Search and Seizure § 3.7 (3d ed. 1996)).  The staleness inquiry depends on the

"inherent nature of the crime."  *Id.* (quoting *United States v. Henson*, 848 F.2d 1374,

1382 (6th Cir. 1988)).  Thus, the court must first focus on whether information that is

sixteen-months old is stale.  In the drug trade, the answer is usually yes.  *See United*

*States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005) ("[I]nformation of an unknown

and undetermined vintage relaying the location of mobile, easily concealed, readily

consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation.") (citations omitted). That is so because drugs are usually sold and consumed in a prompt fashion. With respect to images of child pornography, however, the answer may be no because the images can have an infinite life span.

In analyzing whether information is stale, this court considers the following factors:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
> (2) the criminal (nomadic or entrenched?),
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006) (citing *Spikes*, 158 F.3d at 923) (upholding search warrant for evidence of bank fraud when the fraud occurred three years before the warrant application). The application of these factors to the instant case reveals that the information presented to the magistrate judge was not stale.

*1. Character of the Crime.* As we have explained on multiple occasions, child pornography is not a fleeting crime. And "because the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) (citing *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006)). Indeed, in

*Paull,* the search warrant approved was based on an affidavit that included evidence of the defendant's subscription to a child pornography web site that was purchased thirteen months before the actual search.  *Id.* at 522-23 (citing *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (upholding search for child pornography based on evidence that the defendant subscribed to a similar web site ten months prior to the search)). Moreover, here the agent stated that in his experience evidence of child pornography downloading often remains on a computer for lengthy periods of time. *See United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (holding that courts may give "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found" (citing *United States v. Bethal*, 245 F. App'x 460, 465 (6th Cir. 2007))); *see also Wagers*, 452 F.3d at 540 ("[E]vidence that a person has visited or subscribed to web sites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material." (citing *United States v. Martin*, 426 F.3d 68, 77 (2d Cir. 2005); *United States v. Froman*, 355 F.3d 882, 890-91 (5th Cir. 2004))).

2. *The Criminal.*  The affidavit clearly established that the defendant was not nomadic.  Indeed, all of the evidence indicated the defendant lived in the same house for the entire sixteen months in question.

3. *The Thing to be Seized.*  Unlike cases involving narcotics that are bought, sold, or used, digital images of child pornography can be easily duplicated and kept indefinitely even if they are sold or traded.  In short, images of child pornography can

have an infinite life span. *See United States v. Terry*, 522 F.3d 645, 650 n.2 (6th Cir. 2008) ("Images typically persist in some form on a computer hard drive even after the images have been deleted and, as ICE stated in its affidavit, such evidence can often be recovered by forensic examiners." (citing *Lacy*, 119 F.3d at 746)).

4. *The Place to be Searched.* The place to be searched in this case was the defendant's residence, which is clearly a "secure operational base." *See Paull*, 551 F.3d at 522 (holding that the crime of possession of child pornography "is generally carried out in the secrecy of the home and over a long period" (citing *Wagers*, 452 F.3d at 540)).

All of the *Abboud* factors indicate that the evidence was not stale in this case. Thus, the magistrate judge was correct to consider the defendant's subscription when making the probable cause determination.

### III.

The staleness inquiry, however, does not conclude our analysis. The next question is whether the magistrate judge had a substantial basis to conclude that probable cause existed. *See United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (citations omitted). We conclude the magistrate judge had such a basis.

Probable cause for a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). When reviewing a magistrate judge's probable cause determination, a reviewing court should give great deference to a magistrate judge's probable cause

determination and reverse that decision only if it was arbitrarily made. *Terry*, 522 F.3d at 647-48 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)). The reviewing court "may only look within the four corners of the affidavit." *Abboud*, 438 F.3d at 571 (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). In other words, the reviewing court may reverse the magistrate judge's probable cause determination only if it concluded that the affidavit did not set forth a substantial basis for finding probable cause. *See Gardiner*, 463 F.3d at 470. The warrant here was valid because the affidavit provided the magistrate judge with a substantial basis for finding probable cause. The evidence before the magistrate judge revealed, among other things, that the defendant paid $79.95 to access a commercial child pornography site on January 13, 2007, using an email address and PayPal account connected to his residence at 8-- Van ---- Street. Evidence that an individual subscribed to child pornography web sites "supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material." *Wagers*, 452 F.3d at 540 (citing *Martin*, 426 F.3d at 77; *Froman*, 355 F.3d at 890-91). Moreover, the agents verified that the defendant, a registered sex offender, continued to reside at this address at the time of the search on April 8, 2008. Based on his four years of experience handling child pornography cases, Agent Smith stated in his affidavit that consumers of child pornography usually maintain illegal images using their computers. Further, Agent Smith noted that evidence can remain on the computers even after the viewer deletes the images. Considering all of these facts, there clearly was a "substantial basis" for the magistrate judge to conclude

that there was a fair probability that evidence regarding illegal images of child

pornography could be found on a computer located at 8-- Van ---- Street.  Thus, the

affidavit provided the magistrate judge with a sufficient basis for finding probable

cause.[3]

    The defendant argues that a one-month subscription was not enough to assume

that evidence would exist at the residence.[4]  But requiring law enforcement to show a

two-month or multiple-month subscription before finding probable cause exists would

effectively turn the requirement of a fair probability of finding contraband into one of

near certainty.  Indeed, there is a fair probability that someone who paid for a one-month

subscription would use it, whereas a person who pays a second time almost certainly

made the determination to pay again after viewing the site.  *Cf. United States v. Gourde*,

440 F.3d 1065, 1071 (9th Cir. 2006) (en banc) ("Having paid for multi-month access to

a child pornography site, [the defendant] was also stuck with the near certainty that his

computer would contain evidence of a crime that he received or downloaded images in

_____

[3]Our view of probable cause is neither novel nor radical, and does not expand on that of this circuit or other circuits.  The determination of probable cause is an inherently fact-based analysis that must be conducted on a case-by-case basis.  *See United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995) (quoting *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991)).  By determining whether the facts that were before the magistrate judge gave rise to a fair probability that contraband or evidence of a crime would be found at the place to be searched, we are engaging in the same analysis that is employed every day in courts across the country.  *See, e.g., United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004); *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000).

[4]The affidavit's focus on the one-month subscription does not suggest an absence of probable cause.  There are many situations when a single fact can lead to probable cause.  For example, a police officer that witnesses a drug dealer dealing drugs out of his home could meet the threshold for probable cause and receive a search warrant to search for drugs in the drug dealer's home.  Indeed, a one-month paid subscription to a child pornography web site certainly provides a fair probability that the search will reveal evidence of the crime on the defendant's computer.  In any event, more than one fact exists in this case.  Frechette (1) viewed the splash page; (2) set up a PayPal account to pay for his subscription; (3) transferred the exact amount from his debit card to his PayPal account; and (4) paid $79.95 for a month's viewing of the images of child pornography.

violation of § 2252."). Certainty has no part in a probable cause analysis. *See Gates*, 462 U.S. at 246 (holding "probable cause does not demand the certainty we associate with formal trials" but only "a fair probability"). Stated another way: if someone spends $80 for something, it is highly likely that the person will use it—whether it is a tie, a video game, or a subscription to a pornographic web site.[5] Moreover, the fact that the defendant had viewed the splash page that contained pornographic images of children, set up an account with PayPal on the same day, and transferred the exact amount of funds needed from his debit card to the PayPal account to pay for the subscription makes it all the more likely he would access what he paid to view. To hold otherwise would defy logic. *Cf. Gates*, 462 U.S. at 238 (holding that task of magistrate judge is simply to make "practical, common-sense decision").

It is not likely that the defendant is someone who was innocently surfing the internet and accidentally paid $79.95 for a subscription to the web site. Common sense says he used his subscription. If the web site was accessed, evidence of child pornography was probably on his computer. *See Gourde*, 440 F.3d at 1071 ("Thanks to the long memory of computers, any evidence of a crime was almost certainly still on his computer, even if he tried to delete the images."). Agent Smith said as much in his affidavit, and the magistrate judge could rely upon the experience of the agent.

---

[5]We agree with the dissent that the probable cause analysis should not take into account society's perception of the severity or heinous nature of the crime. The proper inquiry is whether there is a "fair probability" that evidence of the crime—whether it is a crime of copyright infringement, child pornography, or terrorism—will be found in a particular place. Law enforcement officers and prosecutors—not judges—determine the government's priorities in investigating and prosecuting crime. The role of the judge is to look at whether the government presents enough evidence of a crime to determine if probable cause exists to justify a search.

IV.

There is no need to go into a lengthy analysis of whether the agents relied on the search warrant in good faith because the magistrate judge had a substantial basis for finding probable cause. However, even if the magistrate judge did not have a substantial basis for finding probable cause, suppression of the evidence is nevertheless inappropriate because the agents relied on the search warrant in good faith. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984).

V.

Since the defendant likely viewed images of child pornography and maintained the images on his computer at his residence, the evidence of his subscription to the child pornography web site was not stale. Thus, the magistrate judge could conclude that there was a fair probability that the evidence still existed sixteen months later.

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.

_____

**DISSENT**

_____

KAREN NELSON MOORE, Circuit Judge, dissenting.  I wholly disagree with the radical view of probable cause expressed in the majority opinion—a view far more expansive than any circuit has taken to date—and, for that reason, I must vigorously dissent.  The affidavit supporting the warrant in the instant case established a single fact particular to Frechette:  Frechette bought a one-month membership to one website displaying child pornography.  This is the sole basis upon which the majority rests its finding of probable cause, and the majority insists that this result is dictated by our case law and that of other circuits.  Such an assertion, however, ignores the fact that the instant appeal is materially distinguishable from these prior cases.

For example, in *United States v. Wagers*, 452 F.3d 534 (6th Cir. 2006), the affidavit in support of the warrant noted that the defendant had purchased memberships to *three* child pornography websites and that the defendant's home IP address was associated with two of those purchases.  *Id.* at 537, 539.  Wagers's repeated purchase of memberships to multiple websites for several months established a pattern of child-pornography association that provided a substantial basis for the magistrate issuing the search warrant to infer that Wagers was a collector of child pornography.  The issuing magistrate could further infer that Wagers, as a collector, likely downloaded images and that there was a fair probability that evidence of such downloading would be on his computer.  Unlike Wagers, however, Frechette subscribed to only one child-pornography

website for only one month.  The affidavit contains no indication that Frechette did

anything more.  A one-time purchase of a one-month membership to one child-

pornography website simply does not allow a magistrate to draw the same inferences as

the court did in *Wagers*, nor does *Wagers* dictate such a result.

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) (en banc), cited in

*Wagers* and by the majority here, is distinguishable on similar grounds.  In *Gourde*, the

defendant subscribed to a child-pornography website "from November 2001 until

January 2002."  *Id.* at 1068.  Notably, "Gourde never cancelled his membership—the

FBI shut down the site at the end of January, while he was still a member."  *Id.*  In

explaining what "identifying facts about Gourde . . . made it fairly probable that he was

a child pornography collector and maintained a collection of child pornography and

related evidence," the affidavit noted, among other facts, that "Gourde remained a

member for over two months, although he could have cancelled at any time."  *Id.*

Upholding the search warrant, the Ninth Circuit stressed that

> Gourde is different . . . from a person who actually mustered the money
> and nerve to become a member [of a child-pornography website] but, the
> next morning, suffered buyer's remorse or a belated fear of prosecution
> and cancelled his subscription.  Instead, *Gourde became a member and
> never looked back—his membership ended because the FBI shut down
> the site*.

*Id.* at 1070–71 (emphasis added).  The majority here even recognizes that *Gourde*

involved "multi-month access," Maj. Op. at 9, but fails to appreciate that important

distinction or to acknowledge the Ninth Circuit's cautionary language about what

Gourde did *not* do.  *See Gourde*, 440 F.3d at 1070–71.  In contrast with *Gourde*, as with

*Wagers*, Frechette's single site, one-month membership, with no renewal for the following sixteen months, does not allow a magistrate to draw the inference that Frechette was a collector or distributor. Frechette did not, in fact, become "a member and never look[] back," *Gourde*, 440 F.3d at 1071, but rather he ceased affiliation with the site of his own accord.

Two additional cases that the majority cites to support its conclusions are also factually distinct from the instant case and do not control the outcome here. In *United States v. Martin*, 426 F.3d 68 (2d Cir. 2005), the affidavit asserted that the defendant "was a member of the girls12-16 e-group, whose . . . primary reason for existence[] was the *trading and collection* of child pornography." *Id*. at 75 (emphasis added).[1] Thus, in *Martin*, membership in the group itself raised an inference that the defendant downloaded child pornography—the defendant could not take advantage of the primary stated illicit purpose of the group without downloading material on his computer. *See also Coreas*, 419 F.3d at 156–58 (involving e-group membership). Likewise, the defendant in *United States v. Froman*, 355 F.3d 882 (5th Cir. 2004), was a member of the e-group Candyman, the purpose of which "was to *receive and distribute* child pornography and erotica." *Id*. at 890 (emphasis added). This fact led the *Froman* panel to conclude that "[t]he magistrate was entitled to infer from the affidavit that the singular

---

[1] "An e-group is an internet forum through which persons with similar interests can interact by e-mail and online 'chat,' and by posting messages, pictures, and videos to the group's website." *Martin*, 426 F.3d at 70 n.1. Members of a particular e-group are generally authorized to distribute materials to and receive materials from other members of the same e-group via e-mail. *See United States v. Coreas*, 419 F.3d 151, 152 (2d Cir. 2005) (describing the basic function of the Candyman e-group, which was hosted by Yahoo!).

purpose of Candyman was to trade pornography among its members [and] that the overriding reason someone would join this group was to permit him to receive and trade child pornography." *Id.*

The e-groups involved in *Martin* and *Froman* differ significantly from a singular one-month membership to a child-pornography website where one of the primary uses is simply viewing child pornography, rather than trading.[2] This "browsing," without question, can be done without purposefully downloading images. Because in both *Martin* and *Froman* the defendants were required either to download images or receive them by e-mail in order to realize the primary purpose of group membership, these two cases fail to support the conclusion that a mere one-month membership to one child-pornography website—which did not purport to be a trading forum or advertise downloadable images[3]—supported an inference that Frechette downloaded illegal

---

[2]It appears to be an open question whether viewing child pornography on the internet is, in itself, a crime. *See Martin*, 426 F.3d at 77; *United States v. Falso*, 544 F.3d 110, 121 n.13 (2d Cir. 2008) (Sotomayor, J.); *see also United States v. Kuchinski*, 469 F.3d 853, 861–62 (9th Cir. 2006); *United States v. Stulock*, 308 F.3d 922, 925 (8th Cir. 2002); *United States v. Tucker*, 305 F.3d 1193, 1205 nn. 16, 17 (10th Cir. 2002) (offering "no opinion on whether the mere viewing of child pornography on the Internet, absent caching or otherwise saving the image, would meet the statutory definition of possession" and upholding a conviction where the defendant "was not convicted for simply viewing child pornography, but for viewing images . . . with the knowledge that the images were thereby saved on his computer").

[3]The affidavit states that the investigating agents accessed the child pornography "web pages," and viewed the content of the "splash pages (the first page welcoming the user to the website)." Record on Appeal ("ROA") at 27, ¶ 11 (Application and Affidavit for Search Warrant, Apr. 3, 2008). The undercover agent, however, "did not purchase a membership," *id.*, which would have enabled him to access the content of the website and determine whether it contained capabilities in addition to mere browsing. Furthermore, there is no additional information in the affidavit indicating that this was an e-group-type site. The affidavit's description of the site included only a description of the images on the splash page. *Id.* The affidavit further states that the website address was "HTTP:\\***-lolita.com," *id.* at 26 ¶ 4, indicating that its content was not hosted by one of the larger companies that typically provide internet services such as e-groups. *Cf. United States v. Lapsins*, 570 F.3d 758, 762 (6th Cir. 2009) (discussing defendant's creation of an e-group to share child pornography, which had the URL http://photos.yahoo.com/***). Nor were there other indications that it was an e-group or file-sharing website.

images and that there was a fair probability that those images would be located on his computer. It is this distinction that makes the difference.

As demonstrated above, a critical and nuanced view of the case law makes clear that the majority is not merely applying precedent but rather expanding the law further than any other circuit. *See also, e.g.*, *United States v. Shields*, 458 F.3d 269, 278–79 (3d Cir. 2006) (finding probable cause when the defendant voluntarily became a member of two e-group sites trading in child pornography and subscribed with an e-mail address strongly suggestive of an interest in child pornography); *United States v. Strauser*, 247 F. Supp. 2d 1135, 1144 (E.D. Mo. 2003) (finding insufficient probable cause when the affidavit stated only that the defendant subscribed to the Candyman e-group for less than two months with a "sexually suggestive" screen name); *Falso*, 544 F.3d at 120 (noting the common factual threads that tend to establish probable cause). And taking into account the relevant factual distinctions of each case, based on the facts asserted in the affidavit, I fail to see how the totality of the circumstances supports a finding of probable cause here.

I cannot think of any other circumstance where we have endorsed an invasion of a person's privacy with so few facts from which to draw an inference that the intrusion would likely uncover evidence of a crime. What is the justification for such an unprecedented encroachment upon our constitutional protections? Consider a factually identical scenario in a different context: Would this court approve a search warrant for all the computers in a home based on an affidavit that contains only one particularized

fact—that someone who lived at that address obtained a one-month membership to a website that allows its members to listen to music in violation of copyright law? If the answer to this question is "yes," there are not enough officers in the nation to enforce the countless warrants that magistrates may now issue to search college dorm rooms and homes across America. If the answer is "no," as it should be, and as I suspect it would be, one must ask why two cases with materially indistinguishable facts result in two very different outcomes. The answer is as obvious as it is unsettling. The majority's conclusion is erringly shaped by the fact that child pornography cases are particularly appalling. As reprehensible as our society finds those who peddle, purchase, and view child pornography, we, as judges, must not let our personal feelings of scorn and disgust overwhelm our duty to ensure the protection of individual constitutional rights. We must remember, as the district court observed, that we "must not deny the protections of the Constitution to the least of us. There is no such thing as a fair weather Constitution—one which offers the harbor of its protections against unreasonable search and seizure only in palatable contexts and only to worthy defendants." ROA at 46 (Sept. 17, 2008 Op. at 2).

       For the foregoing reasons, I must dissent.