# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 25, 2014 Session

## STATE OF TENNESSEE v. ROBERT D. EWING
## and ANTHONY T. EWING

**Appeal from the Circuit Court for Bradley County**
**Nos. 11CR282, 11CR283   Carroll L. Ross, Judge**

---

**No. E2013-01587-CCA-R3-CD - Filed June 11, 2014**

---

Robert D. Ewing ("Defendant Robert") and Anthony T. Ewing ("Defendant Anthony") (collectively "the Defendants") each pleaded guilty to sexual exploitation of a minor. The Defendants reserved a certified question of law as to whether information received several months prior to obtaining and executing a search warrant was too stale to support probable cause. Pursuant to plea agreements, the trial court sentenced each of the Defendants to two years, suspended to supervised probation. This Court consolidated the Defendants' appeals. Upon our thorough review of the record and applicable law, we reject the Defendants' challenges to the search warrant and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Kenneth L. Miller (on appeal) and Joseph Hoffer (at trial), Cleveland, Tennessee, for the appellant, Robert D. Ewing.

Kenneth L. Miller, Cleveland, Tennessee, for the appellant, Anthony T. Ewing.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Steven Bebb, District Attorney General; and Stephen Hatchett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

A Bradley County Grand Jury indicted each of the Defendants on one count of sexual exploitation of a minor and one count of aggravated sexual exploitation of a minor. See Tenn. Code. Ann. §§ 39-17-1003, -1004 (2010). The Defendants each filed a motion to suppress the search warrant, alleging that the information supporting the search warrant was too stale to justify probable cause. The trial court held a suppression hearing, and the following evidence was adduced:

Detective J.P. Allman with the Bradley County Sheriff's Office testified that he had investigated cases involving child pornography for over two years and estimated that he had worked on approximately fifty such cases. Detective Allman was contacted on two separate occasions in September 2010 by Special Agent Terri Gentry with the Federal Bureau of Investigation and Detective Dan Schneider with the Harriman Police Department who both alerted him that an IP address used by someone residing at 1836 Eads Bluff Road in Bradley County was suspected of downloading and sharing child pornography. Detective Allman obtained a search warrant for the residence in December 2010. Pursuant to that search warrant, Detective Allman seized "approximately four to five computers, and maybe three or four hard drives" from the residence. Detective Allman confirmed that child pornography was found on four of those computers. Defendant Anthony[1] admitted to Detective Allman that he had downloaded child pornography using the computer in his bedroom both alone and with Defendant Robert. Other than Defendant Anthony's computer found in his bedroom, Detective Allman was not able to confirm to whom the remaining computers belonged.

Detective Allman confirmed that, in his experience investigating child pornography cases, there sometimes had been delays between the time information arose indicating that a suspect was in possession of child pornography and the time that a search warrant was executed. Based on his experience and training, Detective Allman confirmed that people who possess child pornography typically keep that pornography.

On cross-examination, Detective Allman confirmed that both Detective Schneider and Special Agent Gentry gave him "a copy of their undercover operations, which contained an IP address." He confirmed that the IP address was connected to the Eads Bluff Road address through a subpoena issued to the Defendants' internet service provider, Charter Communications. He confirmed that the IP address was "dynamic" rather than "static,"

---

[1] We refer to each of the Defendants by his first name for the sake of clarity. We intend no disrespect.

which meant that it could change. Detective Allman agreed that an IP address is not specific to an individual computer but rather applies to the entire network at the physical address. He confirmed that it was possible that a neighbor or someone near the physical address could access a wireless network if it were not properly secured and that person's internet activity would then register under the IP address at that location. When asked whether he had checked to see if the IP address in question still was located at the Defendants' physical address at the time he executed the search warrant, Detective Allman responded, "There's no legal way that I could have done that."

Detective Allman explained that, in November 2010, he discovered through real estate and driver's license records that there were four licensed drivers living at the Eads Bluff Road address, namely the Defendants, Roger Ewing, and Stephanie Ewing. He agreed that this was the last time he had confirmed that the Defendants resided at the Eads Bluff Road address. In December 2010, just prior to obtaining the search warrant, Detective Allman drove by the Defendants' residence and took photographs of the exterior of the house and driveway.

Detective Allman confirmed that, when one downloads the peer-to-peer software programs Gnutella and LimeWire, a "shared folder" is created on that user's computer from which the files that the user downloads are made available for download by others using the same software. Detective Allman disagreed that it would have been "easy" to go back into the peer-to-peer software shortly before executing the search warrant and confirm that the files still were being shared by the IP address in question. He explained, rather, that it would be difficult when searching for specific files to isolate the specific IP address in question. Detective Allman agreed that it is possible to delete files from a computer, but he added that such files, when deleted, still remain on the computer in some form. He agreed, however, that certain software can delete files permanently from a computer. Regarding the likelihood that the files in question had been deleted prior to executing the search warrant, Detective Allman reiterated, "as talked about in the search warrant, [in child pornography] investigations, people tend to make collections of it and keep it." When asked how many times he had "ever gotten information that somebody was in possession of child pornography and gone to the residency and found that it had been erased, or found that it had been destroyed," Detective Allman simply responded, "None." He explained that on occasion he had found that the suspect had changed computers but that the suspects "still retained their collection of child pornography" by transferring it to the new computer or onto an external hard drive.

Following the suppression hearing, the trial court reasoned that, unlike narcotics, "[i]nternet stuff, as the officer testified, whether you erase it or not, it's generally there forever." According to the trial court,

[B]ecause of the nature of the kind of accusation and the kind of evidence it is, it's not the kind of thing you're going to use up like an ounce of cocaine or a bag of marijuana or something of that nature that you need a little more immediate response to information you might get. Now that's not to say the Court would encourage delay or anything like that, but I don't think there was any showing that there was any undue delay here.

Accordingly, the trial court denied the Defendants' motions to suppress the search warrant.

The Defendants each pleaded guilty to one count of sexual exploitation of a minor and reserved a certified question of law as to whether the information supporting the search warrant was so stale as to negate probable cause. At the plea hearing, the State provided the following factual basis for the Defendants' plea:

[The Defendants] came under investigation first by the Harriman Police Department, their Internet Crimes Against Children Unit, using a peer-to-peer software on the Internet, located what appeared to be child pornography in servers that had been put on the Gnutella network to make them available to people to download. The detective in Harriman checked the, checked the files. He believed that it was child pornography. The Federal Bureau of Investigation got involved. They were on the peer-to-peer network. They saw what they believed to be child pornography. They passed that information on to Detective Allman. Detective Allman was able to download files from the IP address. He saw what he believed to be child pornography. He obtained a search warrant, searched the residence of [the Defendants]. They're brothers. They lived together. . . .

. . . .

The first defendant, [Defendant Robert], when he was advised of his Miranda rights, he invoked his right to remain silent. However, he later initiated a conversation with Detective Scoggins, Detective Dwayne Scoggins with the Bradley County Sheriff's office. He told Detective Scoggins that he had seen child pornography on his brother's computer, [Defendant Anthony], and had been present with [Defendant Anthony] while he was downloading child pornography, but [Defendant Robert] claimed that he did not download images himself. However, he acknowledged that when he moved here from Florida to Tennessee, he brought his computer. It was downstairs and is the computer that he uses. The computer was examined. There were images found on the computer that we believe if we presented it to a jury, a jury would

-4-

convict him of child pornography. There is an issue in [Defendant Robert] and [Defendant Anthony] as far as the count of the images, as well as in [Defendant Anthony] and possibly [Defendant Robert], their age, as far was what would count when they turned 18, what would count before they turned 18. That was something that was brought up in the hearing, and based on the, the fact that there could be an issue with how many counts exactly, but primarily, Your Honor, the age of these two defendants, one is, one was 19 at the time. One turned 18, had been 17. . . .

In [Defendant Anthony's] case, if we went to trial, we would present his statement to the jury. He did admit to downloading child pornography. However, he also said that [Defendant Robert] was in fact involved in downloading child pornography and that he was there when he did it, so there would be some issues, some Bruton issues that we would get into in this trial as far as each defendant's statement against the other. But at the end of the day, we would present the two computers, the images found on the computers, and I believe the jury would convict them, but certainly the jury would have to sit there and count through the images and decide whether to convict them of excess of 100 images, or what we're allowing them to plead to, which is 50 or less, Your Honor.

Pursuant to plea agreements, the trial court sentenced each of the Defendants to two years, suspended to supervised probation. Due to both the late filing of an order certifying a question of law for appeal and the late filing of both Defendants' notices of appeal, the Defendants each filed a petition for post-conviction relief.[2] By agreed order, the trial court granted the Defendants' petitions for post-conviction relief and gave the Defendants leave to file a delayed appeal.

## Analysis

### *Certified Question*

As a general rule, a criminal defendant who enters a plea of guilty waives the right to an appeal. State v. McKissack, 917 S.W.2d 714, 714 (Tenn. Crim. App. 1995); State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996). However, under Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure, a defendant may appeal a certified question of law "that is dispositive of the case" where that question was "explicitly reserved with the consent

---

[2] We glean the circumstances of the Defendants' post-conviction petitions from their briefs on appeal. However, no copy of the Defendants' post-conviction petitions are included in the record.

of the state and of the court." Tenn. R. Crim. P. 37(b)(2)(A). In order to properly preserve a certified question for appeal, a criminal defendant must meet the following requirements:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Id. The burden to comply with these requirements is placed solely upon the defendant, and failure to do so will result in dismissal of the appeal. State v. Pendergrass, 937 S.W.2d 834, 838 (Tenn. 1996) (citing State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988)).

In its brief, the State argues that the Defendants failed to meet the prerequisites of Rule 37(b)(2)(A), asserting, "[I]t is unclear whether the certified question is dispositive of the case because it is not entirely clear from the trial court's order exactly the question of law that the [D]efendants intended to reserve for appellate review." According to the State, this Court "is left to guess as to the exact question it must address." We disagree.

The trial court's order certifying a reserved question of law directly described the Defendants' motions to suppress as alleging "that information upon which the search warrant was issued was 'stale' and could not support a finding of probable cause" and summarized the delay between the information and execution of the search warrant. The order further stated that the Defendants "reserved a Certified Question of Law the Court's overruling of the motion to suppress, specifically as to the Court's holding that information received months before application for the search warrant was still valid and could support issuance of the search warrant." Finally, the order includes the trial court's finding that the certified question of law "would be dispositive of this case in that the State would have no evidence to proceed if the search warrant was invalid" and is signed by defense counsel, the trial judge, and the State.

We hold that this order was sufficient to satisfy the prerequisites of Rule 37(b)(2)(A). The trial court's order "contain[ed] a statement of the dispositive certified question of law reserved" which was "stated so as to clearly identify the scope and the limits of the legal issue reserved." Preston, 759 S.W.2d at 650. Furthermore, the order specifically stated the reasons relied upon by the Defendants at the suppression hearing in support of their motions to suppress. See id. Therefore, we proceed to consider the question on the merits.

*Motion to Suppress*

When conducting a review of a trial court's determinations from a suppression hearing, we will uphold the trial court's findings of fact unless the preponderance of the evidence is otherwise. State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. Because the State is the prevailing party, it is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id. However, "a trial court's conclusions of law" and "mixed questions of law and fact" are reviewed de novo without any presumption of correctness. Meeks, 262 S.W.3d at 722.

The Defendants assert that probable cause was lacking because the information supporting the warrant was stale. Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. State v. Ingram, 331 S.W.3d 746, 754 (Tenn. 2011) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).[3] A search warrant only shall be issued "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see Tenn. Code Ann. § 40-6-103 (2010); Tenn. R. Crim. P. 41(c). "Probable cause requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006). In order to establish probable cause, the affidavit supporting the search warrant "must set forth facts from which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched" and,

_____

[3] The Fourth Amendment is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Mapp, 367 U.S. at 655; Ingram, 331 S.W.3d at 754. The intent and purpose of article I, section 7 of the Tennessee Constitution is identical with the Fourth Amendment; however, our Supreme Court previously has noted that Tennessee's search and seizure case law has developed independently from, and extends greater protection than, federal law. See State v. Richards, 286 S.W.3d 873, 877-78 (Tenn. 2009).

likewise, "must allege that the contraband sought to be seized or the illegal activity in question exists at the moment the search warrant is to be issued." State v. Norris, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000) (citing State v. Longstreet, 619 S.W.2d 97, 99 (Tenn. 1981)).

In determining whether a lapse of time between obtaining evidence and executing a search warrant removes probable cause, "the issuing magistrate should consider whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought, and the opportunity those involved would have had to dispose of incriminating evidence." State v. Meeks, 876 S.W.2d 121, 124-25 (Tenn. Crim. App. 1993). Therefore, "'[w]hen the illegal activity described is ongoing, courts have generally held that the affidavit does not become stale with the passage of time.'" Norris, 47 S.W.3d at 470 (quoting State v. Thomas, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991)).

According to the search warrant, Detective Allman received the information from Detective Schneider that an individual in Bradley County was using the Gnutella file-sharing network to obtain and share child pornography on September 23, 2010. This information arose out of Detective Schnieder's August 9, 2010 investigation in which he identified an IP address of a Gnutella user who was sharing multiple videos and images of child pornography. Detective Allman received the same information from Special Agent Gentry on November 8, 2010. Special Agent Gentry's investigation leading to the same IP address was conducted on August 3, 2010. On September 14, 2010, Charter Communications, the internet service provider for the IP address in question, returned Agent Gentry's subpoena. It was only then that the IP address in question was connected with the Defendants' physical address. On November 9, 2010, Detective Allman determined that four licensed drivers lived at the Eads Bluff Road address, including the Defendants, and that the property located at this address was owned by Robert Ewing, the Defendants' father. Detective Allman obtained and executed the search warrant on December 9, 2010. Therefore, there was approximately a four-month period between the time the files were discovered by Detective Schnieder and Special Agent Gentry in August 2010 and the time that the search warrant was executed in December 2010. However, there was only a three month delay between the execution of the search warrant and the time the information was connected to the Eads Bluff Road address.

In State v. John Jason Burda, No. M2006-02523-CCA-R3-CD, 2009 WL 1181349, at *4 (Tenn. Crim. App. May 4, 2009), this Court considered a case in which there was a one month gap between the time that information supporting a search warrant for child pornography arose and the execution of that warrant. In Burda, this Court held that "those who collect child pornography are likely to keep it for extended periods of time and even if a person believes he has deleted something from his computer, without use of a special type of software it is unlikely that the image was actually destroyed." Id. Therefore, this Court

concluded that the information was not too stale to support probable cause. Id.; see also State v. Jared Scott Aguilar, No. M2012-02611-CCA-R3-CD, 2013WL 6672946, at *10 (Tenn. Crim. App. Dec. 18, 2013) (noting that "child pornography, unlike other evidence that can easily be consumed or destroyed, are often hoarded and, even when not hoarded, remain on the user's computer even after deletion.").

We also note that federal courts overwhelmingly have declined to extend the protections of the Fourth Amendment to invalidate search warrants related to child pornography on staleness grounds, even in cases with much greater delays than that of the instant case. For example, the Sixth Circuit Court of Appeals has elucidated:

> As we have explained on multiple occasions, child pornography is not a fleeting crime. And 'because the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography.' United States v. Paull, 551 F.3d 516, 522 (6th Cir. 2009) (citing United States v. Wagers, 452 F.3d 534, 540 (6th Cir. 2006)).

United States v. Frechette, 583 F.3d 374, 378 (6th Cir. 2009). In Frechett, the Sixth Circuit Court of Appeals reversed the lower court's ruling invalidating a search warrant on staleness grounds where the search warrant was based on the suspect's subscription to a child pornography website which ended sixteen months prior to obtaining and executing the search warrant. Id. at 376-77; see also United States v. Wagers, 452 F.3d 534, 540 (6th Cir. 2008) (holding that "evidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material."). The Sixth Circuit's approach to staleness in child pornography cases is consistent with other circuits. See, e.g., United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997); United States v. Estey, 595 F.3d 836, 840 (8th Cir. 2010); United States v. Allen, 625 F.3d 830, 842-43 (5th Cir. 2010).

In the instant case, we agree with the trial court that the nature of child pornography is not fleeting or isolated and is not easily consumable or destroyed as might be the case with "an ounce of cocaine or a bag of marijuana." Rather, the collection and sharing of child pornography is of a continuous and ongoing nature and typically remains in possession of the user for an extended period of time. The affidavit submitted by Detective Allman in support of the search warrant specifically stated that "[p]ersons involved in sending or receiving child pornography tend to retain it for long periods of time . . . the images are intrinsically valuable as trading/selling material and therefore are rarely destroyed or deleted." Given the nature of the evidence sought, the magistrate reasonably could have concluded that the child

pornography discovered by Detective Schneider and Special Agent Gentry in August 2010 remained on the Defendants' computers at the time the search warrant was issued four months later. Therefore, we hold that the information underlying the search warrant was sufficient to establish probable cause and uphold the trial court's decision denying the Defendants' motions to suppress the search warrant on staleness grounds.

### **Conclusion**

For the reasons set forth above, we affirm the judgments of the trial court.


_____
JEFFREY S. BIVINS, JUDGE